GLADWIN *against* LEWIS :

IN ERROR.

The service of civil process, on a day appointed by proclamation of the governor, for public Thanksgiving, is prohibited by statute (*tit.* 82. *s.* 8.) and void.

This was an action brought by *Gladwin,* against *John L. Lewis,* Esq. sheriff of *Middlesex* county, for an escape, returnable to a justice of the peace. The defendant pleaded in abatement, that the plaintiff's writ was no otherwise served upon him, than by a constable's leaving a copy thereof with him at *Middletown,* on *Thursday,* the 27th day of *November,* 1823, between the hours of 11 o'clock in the forenoon and 3 o'clock in the afternoon of that day; the said day being a day appointed for public thanksgiving, by proclamation of His Excellency, *Oliver Wolcott,* then Governor of the state of *Connecticut,* pursuant to the 8th section of the statute for the due observance of the *Sabbath* and days of public Fasting and Thanksgiving. To this plea the plaintiff demurred; and judgment was thereupon rendered in favour of the defendant. To revise this decision, the plaintiff brought a writ of error in the superior court; which was reserved for the advice of this Court.

*Hotchkiss* and *Storrs,* for the plaintiff in error, contended, That service of civil process, on thanksgiving day, is good. In

*Middlesex,*
July,
1825.

State
*v.*
Stewart.

the first place, it is not declared void, by any *express* provision of the statute. Servile labour and recreation are prohibited, under a penalty; but there the statute stops. *Stat*. 386, *tit*. 82. *s*. 8.

Secondly, at common law, civil process might be served even on *Sunday ;* the rule being, that no *judicial* act ought to be done, but that ministerial acts might be lawfully executed, on that day. *Mackalley's* case, 9 *Co. Rep*. 66. S. C. *Cro. Jac*. 280. *Swann* v. *Broome*, 3 *Burr*. 1601. So too, it was no offence, at common law, to exercise the trade of a butcher, on *Sunday*. *Rex* v. *Brotherton*, 2 *Stra*. 702. Or to make contracts generally. *Drury* v. *Defontaine*, 1 *Taun*. 131. 135, 6. Thus the law remained, in the country of our ancestors, until it was changed, by sundry statutes, particularly, the stat. 29 *Car*. 2. *c*. 7.

Thirdly, the prohibition of servile labour and recreation on a thanksgiving day, does not, by *implication*, render civil process served on that day, void. It is very questionable, indeed, whether the prohibition of the statute reaches the service of civil process. It is neither servile labour, nor recreation, in the ordinary acceptation of those terms; and there is nothing from which it can be inferred, that the legislature intended to use them in a different sense. But admitting that the service of civil process on a thanksgiving day, is prohibited by the statute, still it is not a legitimate inference that such service is void. Taking the whole statute together, it may be reasonably inferred, that this was not the intention of the legislature. By the 5th section, the issuing or service of civil process on *Sunday* (including the preceding and a portion of the succeeding night,) is made void; but no part of the statute contains such a provision in relation to thanksgiving day. Is the same thing meant in both cases ? Does not the course of legislation on these subjects, indicate a clear distinction between them ? *Expressio unius, exclusio alterius*. But not to insist on this consideration; does the prohibition of an act under a penalty, render such act void, in relation to third persons ? The rule of law is, that a *contract* to do an act prohibited by statute, is void; so that it cannot be enforced, while it remains executory, nor be made the foundation of an action, after it has been executed; the law leaving the parties, in such cases, if *in pari delicto*, as it finds them. The constable, in this case, is liable to the penalty; and may not be able to recover his fees ; but does it fol-

*Middlesex*,
July,
1825.

Gladwin
*v.*
Lewis.

low, that the service is not good as between the parties to the suit? If a statute prohibit the sale of certain lottery tickets, under a penalty; though the seller may be exposed to the penalty, and though he may not be able to recover the purchase money; yet is the sale to be void as against the purchaser, so that he can acquire no title to the ticket? If a statute prohibit the celebration of marriage, without due publication of the intention of the parties, under a penalty; the magistrate or minister violating this statute is liable to the penalty; but is the marriage void; are the issue bastards? *Reeve's Dom. Rel.* 197, 8.

Fourthly, the service of civil process is a work of *necessity*, within the exception of the statute.

*H. L. Hosmer*, for the defendant, contended, 1. That the service of civil process, on thanksgiving day, is prohibited by statute. Here it is unnecessary to recur to the common law of *England.* In relation to subjects of this nature, our ancestors paid more regard to the *Jewish* law, than to the *English* common law. But the question depends wholly on the construction of our statute. What is meant by "servile labour"? In the 1st section of the statute, all "secular business" is prohibited, "works of necessity and mercy excepted." In the 8th, all "servile labour" is prohibited, with the same exception. The provisions of the 5th section were introduced, for the purpose of designating *the period of time* to be embraced in the prohibition of service; otherwise, that section would have been unnecessary. The words "servile labour" are evidently used in the statute as synonymous with "secular business." The intention of the legislature, in setting apart the day, was to withdraw the good people of the state from worldly cares and labours, and to secure the observance of public worship, as on the *Sabbath.* These seasons have been classed together in our ancient statutes, and guarded from profanation, by the same provisions. *Stat.* 141. ed. 1750. *Stat.* 579. 580. ed. 1808. But the performance of ministerial acts would be in direct collision with this object.

2. That if the service of civil process is prohibited by statute, the service in this case, was absolutely void. 1 *Com. Contr.* 37. 1 *Pow. Contr.* 164, 5. 1 *Swift's Dig.* 213. *Mitchell* v. *Smith*, 4 *Dall.* 269. If the act done were *voidable* only, the officer might be subjected to the penalty, and the act be validated. 2 *Lilly's Abr.* 807. But no person is bound, by a *void* act.

Notes executed on the *Sabbath*, have been held to be void.
*Wight* v. *Geer*, 1 *Root* 474.

3. That the case is not within the exception of the statute; the service of civil process not being a work of *necessity*. An act is said to be necessary, when there is a high degree of moral fitness in its being done. But is there any moral fitness in disturbing the repose of a day set apart for sacred purposes? Private inconvenience may sometimes be experienced, by abstaining from *any kind* of servile labour; but if this would bring a case within the exception, the prohibition would be of little use. The same exception, in relation to the *Sabbath*, has always received a different construction.

BRAINARD, J. The question in this case is, Whether the service of civil process on a thanksgiving day, in *Connecticut*, is valid. We need not discuss the question, whether at the common law, the service of civil process on the *Sabbath* is good. Admit it. Neither is it necessary to comment on, or call in aid, the several *English* statutes in relation to the subject. There were two made in the reign of *Charles* II. One, I believe, of the 24th, the other the 27th. This subject was early taken into consideration, by our legislature. Our pious ancestors, thinking, perhaps, that the divine command,—a command, in my view, exceedingly broad,—" Six days shalt thou labour, and do all thy work, but the seventh is the Sabbath of the Lord, thy God," not sufficiently explicit, not expressly prohibiting the service of writs on the *Sabbath*; or perhaps, thinking that legislative sanction might not be amiss; enacted what in substance is retained in our present statute : "That if any civil process shall be issued or served between the setting of the sun, on *Saturday* night, and 12 o'clock of the succeeding *Lord's day* night, it shall be void."

This settles the question as to the service of civil process on the *Sabbath*, in *Connecticut*. But it is said, that in the statute entitled "Sabbath," there is a marked and material distinction between the *Sabbath* and days of thanksgiving; that although the service of civil process is expressly prohibited, on the one, it is not, on the other. It must be admitted, that in *Connecticut*, the service of civil process is the subject of civil, not of religious regulation.

The 8th section of the statute, which relates to the observance of days of thanksgiving, is, "That all persons shall ab-

stain from every kind of servile labour and vain recreation, works of necessity and mercy excepted."

*Middlesex,*
July,
1825.

Gladwin
*v.*
Lewis.

The words of the statute, 1st section, are, "No person, on the *Sabbath*, shall do any secular business, works of necessity and mercy excepted."

It is contended, that although the service of civil process, on the *Sabbath*, is made void; yet the same service on days of thanksgiving, is only prohibited.

I am not about to enter into the discussion of the distinction between *void* and *voidable*. I will only say, that an act by law prohibited, cannot be sanctioned and made valid, by the payment of a fine or penalty. (a)

It is further contended, that there is a distinction between the two sections of the statute; between " secular business" and " servile labour;" that the service of a writ may be called secular business, but not servile labour. There is, indeed, a difference in *expression*, but, I think, not in *principle*.

The service of a writ is labour; and generally, servile. A sheriff may race his horse after a fugitive debtor, and find the exercise servile enough; and, I think, common sense would say, it was also secular.

It is further said, that the service of civil process on a thanksgiving day, may be *necessary*. Without commenting on the word " necessity," as used in the several sections of the statute referred to, it is sufficient to observe, that the expression " works of necessity and mercy excepted" is used in the 1st section of the statute, in relation to the *Sabbath*, and also in the

(a) It seems to be the opinion of eminent jurists, that previous to the act of *May*, 1820, a marriage, celebrated by a person not having the requisite qualifications for this purpose, was a valid marriage. *Reeve's Dom. Rel.* 197. How this anomaly in our law was introduced, is a matter worthy of some enquiry.

The canon law is the basis of the matrimonial law of *Europe*. By that law, there were three classes of marriages: 1. *regular* marriages, where every thing was presumed to be complete and consummated, both in substance and in ceremony; 2. *irregular* marriages, where every thing was presumed to be complete and consummated in substance, but not in ceremony; 3. *sponsalia per verba de futuro*, where nothing was presumed to be complete or consummated, either in substance or ceremony. At the reformation, the law of *England*, rejecting what was peculiar to the *Romish* church, adopted these rules of the canon law, which had their foundation, not in the sacrament, or in any religious view of the subject, but in the natural and civil contract of marriage. The ecclesiastical courts, therefore, which had the cognizance of matrimonial causes, enforced these rules, and among others, that which held an *irregular* marriage constituted *per verba de præsenti*, valid. This doctrine was also recognized, by the temporal courts,

8th, in relation to days of thanksgiving. But the 5th section, in relation to the service of civil process, admits of no exception of "necessities." Besides, the service of civil process, on days set apart for religious observance, either by divine command or civil authority, cannot be said to be a work of necessity, much less of mercy.

I would advise, that the judgment of the superior court be affirmed.

HOSMER, Ch. J. was of the same opinion.

PETERS and BRISTOL, Js. dissented.

Judgment affirmed.

as the established matrimonial law of *England*. In *Collins* v. *Jessot*, 6 *Mod.* 155. *S. C.* 2 *Salk.* 437. in the reign of Queen *Anne*, it was said, by *Holt*, Ch. J.— "If a contract be *per verba de præsenti*, it amounts to an *actual marriage*, which the very parties themselves cannot dissolve, by release, or other mutual agreement; for it is as much a marriage in the sight of God, as if it had been *in facis ecclesiæ*." Thus the law remained in *England*, until the statute of 26 *Geo.* 2. *c.* 33. which declared all marriages, not solemnized according to its requirements, absolutely null and void.

When our ancestors left their native country, a *regular* marriage could be celebrated, there, only before a clergyman in orders. Here, it accorded better with their feelings and views, to delegate this power to the civil magistrate; for it appears from an ordinance, passed by the legislature of *Connecticut*, as early as the 10th of *April*, 1640, regarding *sponsalia per verba de futuro*, that he alone was, at that time, recognized as the proper functionary for this service. It was not until *October*, 1694, that the ordained ministers of the several plantations were authorized to celebrate marriages. Their power was restricted to their respective towns, until *May*, 1783, when it was extended throughout the county. But throughout the whole course of legislation on this subject, from the first establishment of the government down to the act of *May*, 1820. marriages of the second class, were never declared void. They rested, then, on the same ground, and were to be viewed in the same light, as marriages of the same description in *England*, in the reign of Queen *Anne*, or at any time previous to 26 *Geo.* 2. *c.* 33.—*R.*