# TWIN VALLEY TELEPHONE CO v. MITCHELL *et al.*

## No. 1861. Opinion Filed November 16, 1910.

1. **SUNDAY—Telephones—When Service Required.** A telephone exchange can be required to be kept open and operated on Sundays only at such time as works of necessity or charity and other lawful acts may reasonably require the use of the same.

2. **TELEPHONES—When Service Required—Reasonable Hours.** A telephone company is required to operate its exchange during reasonable hours on every day in the week, including Sunday, in order to comply with its charter and franchise obligations.

    (a) As to what are reasonable hours depends upon the size of the town or village, the number of patrons, and the amount of income and expense, and the demand for service.

    (b) What may be reasonable hours on a week day may be unreasonable hours on Sundays.

3. **SAME—Hearing Before Corporation Commission—Evidence.** When it is proposed to make an order requiring a telephone company to keep open and operate an exchange in a town of 300 people at every minute during every day of the week, day and night, including Sunday, evidence is admissible to show that such could not be done except at a pecuniary loss to the telephone company.

    (a) Evidence is also admissible to show the reasonable demand for service during the night time of every day in the week, and also during the day time on Sundays.

(Syllabus by the Court.)

*Appeal from the Corporation Commission.*

Action by W. N. Mitchell and the State against the Twin Valley Telephone Company. From an order of the Corporation Commission, the telephone company appeals. Reversed and remanded.

*Adelbert Hughes,* for appellant.

WILLIAMS, J. On the 14th day of February, 1910, W. N. Mitchell filed a complaint with the Corporation Commission alleging that appellant, as a telephone company, was engaged in transmitting messages by wire between points in said state, and

operated an exchange in the town of Morrison, charging stipulated prices for the rentals of its phones, etc.; that said company refused to keep its office open on the first day of the week, known as Sunday, and would not receive or send any telephone messages on said day, much to the inconvenience of its subscribers. Then follows a prayer that said company be required to keep its office open and receive and transmit messages on Sunday the same as any other day. After notice on said company, a hearing was had before said commission on March 9, 1910, at which the complainant testified substantially that he was a subscriber of said telephone company, and had been for about three years. That, when he first became a subscriber, the subscribers had service at any and all times. That, about the first of the year 1910, the company adopted the rule not to keep the exchange office open on Sunday from 8 a. m. to 2 p. m., and from 4 p. m. during the balance of the day. That he resided on a rural route out in the country on a farm about four miles from said town, which had a population of about 300;. That he paid for said phone during the first year $25.00, during the second year $20.00, and for the third year $18.00. That, when the manager of the Twin Valley Telephone Company came to his place to collect for the year 1910, he stated he had discontinued service on Sunday, and that witness stated to him that he did not care to keep his phone unless he could get service when he needed it, and the phone was taken out that day, he paying him up to the date that he had it taken out, to wit, the 13th day of January, 1910; that it occurred to him shortly after the manager left that he could get service and could get redress through the Corporation Commission, and he wrote to the Corporation Commission and asked them in regard to it, and received a letter from said commission stating that any telephone company, large or small, doing business in the state of Oklahoma would be required to give service at any and all times; that he notified the company to then re-install his phone; that that date was the 26th day of January, when he paid the year's phone rent and then filed this complaint. .

On cross-examination as to what business the subscribers would

be likely to have that would require talking over the phone lines by means of the exchange on Sunday, the witness stated that they might want to call a doctor; that he had a neighbor on the west of him who had tried to call a doctor and could not get service on Sunday, and that he had to go the distance of four and a half miles to town to get the doctor. That at all times the subscribers did not need the phone on Sunday, but they felt that if they paid for the service they should have it at any and all times, including Sunday. Whereupon, on objection, further evidence was not permitted to be offered as to the reasonably necessary use of the phones on Sunday.

A portion of the record is, in words and figures, as follows:

"By Mr. Hughes: I would like to state that it is the desire of the telephone company to comply with the law. There is no disposition not to do that on our part. We want the commission to make any order that might be agreeable to the people of the country. By Mr. Watson: Now I will state, Mr. Hughes, in response to your question or remark, that the commission had, in former case of this kind that came before it, made a ruling that the telephone business in this state, they are a public service business, and under our laws and Constitution, required to give service to the people when demanded and all times, and the commission—I don't see how it could make an order otherwise than to require the telephone companies of this state to give service when the patrons of their lines require it. It is a question that is provided for in the Constitution and laws of our state, they shall give physical connection where required and service when required, and the commission couldn't make an order where a complaint has been filed and asking for this service—they couldn't make an order otherwise than to have that service given. By Mr. Hughes: Now, does that apply to the very small cross-road towns? By Mr. Watson: No exceptions to it when required. By Mr. Hughes: Well, I presume, if it please your Honor, that the question involved in this case may be of such interest to the telephone companies that, even in view of that ruling, I shall proceed with the evidence. I would like to proceed with the evidence. By Mr. Watson: The people in the country subscribe to the telephone service with the view of getting that at any time they might need that service. They cannot tell at what times one member of the

family may become seriously ill and they may need a doctor or some other assistance, and for various other reasons they are entitled to service they are paying for. By Mr. Hughes: Yes, sir; personally I appreciate that very readily. By Mr. Watson: If you want, in view of the facts mentioned here—if you want to go ahead, all right. By Mr. Hughes: I think on behalf of the independent people I should do so."

H. S. Lamar, manager of the Twin Valley Telephone Company, testified, in substance, that he was president and manager of said company and had been for three years. That the gross income of said company during that period had averaged $113.00 and some cents per month. That at the time of said hearing they had eighty-seven subscribers for phones in the town and country.

We quote from the testimony:

"Q. Well, just wait a minute. Are you in position to state your approximate expenditures per month? A. I can give the items of it. Q. Well, do so, if you please. A. Well, we have a man and furnish team and rigs— By Mr. Watson: What is your object? By Mr. Hughes: The object is to show that increasing facilities would destroy the property. Couldn't pay the expense in giving 24 hour service. Unable to do it, financially. We haven't the money. By Mr. Watson: That would be immaterial in this case from the fact of this man having a monopoly on the business there, and that prohibits other parties from coming in and installing a telephone that might be able to run it to advantage and profit to himself. While this company prohibits anyone else from coming, and from the fact of their having a monopoly on the business, whether that business pays them or not, it is their duty under our law to give the people of that town service so long as they remain in the business, whether or not that is a remunerative business to them. By Mr. Hughes: Is that the ruling of the commission? By Mr. Watson: Yes, sir. By Mr. Hughes: Exception. By Mr. Lamar: May I speak a word? Now the company had had this business there, ran it three years and ran behind $2,000, and never paid any tax, never paid any tax in the Oklahoma Territory until I got it. I have paid $100 and have run it three years, and have made up my mind to quit the business unless I could get the revenue to pay the expense. I put $2,400 of my own money in it. But at the same time the subscribers don't work with the manager to build it up. We have a phone

with 27 subscribers on it, and all taken up but one in this neighborhood. And this neighborhood all use that phone. We built it up and tried to build the line, but found we would have to do something to cut down expenses. And the operator cannot stand it, and she had quit. By Mr. Watson: Q. You found it to be an unprofitable investment, did you? A. Yes, sir. Q. That is your misfortune, and not the public. You may conduct it in a manner to destroy your patronage, but the public, or rather the law, does not excuse you from giving service as long as you own that plant. A. We don't object, if anyone wants to put up a system. Q. But so long as you are in the business the law requires you to give the service. By Mr. Hughes: Will the commission permit me? I offer to prove by this witness the gross income per month and per annum of the telephone company, and also the gross expenditure per month and per annum, the loss of the company during both of these periods, the number of subscribers, the amount of tolls, capital stock, amount of money paid in, the indebtedness and fixed charges, for the purpose of showing that this company cannot, with its assets available or that will be available in the near future, comply with the order of the commission, if it is required to give 24 hour service, and continue to do business, and that the denial of the introduction of this evidence is a taking of property without due process of law and is denying to the telephone company an equal protection of the law. I believe that is all. I just wanted to make the record clear. I believe that is all. By Mr. Watson: Overruled. By Mr. Hughes: Note an exception. I believe the practice requires the making of an order to make and serve a case-made. I don't know that the case is going to be appealed, but, in the event it is, would like to have the time to serve a case-made. By Mr. Watson: Well, you know what the law requires?"

The order of the commission is in words and figures as follows:

"The complainant is a farmer living about four miles northwest of Morrison, and is a subscriber to the Telephone Company, and pays a stipulated rental per annum for services. The defendant, The Twin Valley Telephone Company, is duly organized under and pursuant to the laws of the state of Oklahoma with its main office in the town of Morrison, and is doing a general telephone business. Complainant alleges that he and other subscribers do not receive the service they are entitled to on the first day of the week,

commonly called Sunday, in that the defendant closes its office during the hours of eight a. m. to two p. m. and from four p. m. for the rest of the day. Defendant admits of this being true. It is the opinion of the commission that when a telephone company makes a charge for service, or when such company is serving the public whether for pay or *free of charge,* it should so equip its office or offices as to render service to its patrons at any or all times. It is therefore ordered, that on or before August 1st, 1910, the defendant, the Twin Valley Telephone Company, shall so equip its office as to render efficient telephone service both day and night at any fractional part of the minutes on each day of the week and shall continue to maintain such service until further ordered by the commission. Defendant excepts."

This case is now properly before this court on appeal for review. The question for determination is whether, under this record, the order of the commission requiring appellant to render "telephone service both day and night at any fractional part of the minutes of every day of the week," including Sunday, is a reasonable requirement, though it can only be done at a pecuniary loss. It will be observed that the main purpose of the complainant was to have telephone service afforded all day during each Sunday.

In *Walsh v. Chicago, Milwaukee & St. Paul Ry. Co.,* 42 Wis. 23, it is said:

"It is manifest that the action is not sustainable for a breach of duty as carrier, because the defendant was under no obligation to carry the plaintiff or any other person on its road that day. It does not run passenger trains on Sunday for the accommodation of the public, nor does it hold itself out to the world as ready to engage in the transportation of passengers on that day. If the plaintiff had presented himself at the passenger depot on the morning of the 14th of September, offered to pay the usual fare, and insisted upon being carried to Watertown that day, it is very evident that it would not have been a breach of duty for the defendant to have refused to carry him. The common carrier is bound to transport an individual upon being paid a reasonable rate of fare, unless it has a valid excuse for not performing that duty. Here the defendant had a perfectly valid excuse for not running its passenger trains on Sunday (sec. 5, ch. 183, R. S.), and this was doubtless well understood by the plaintiff."

Said sec. 5 of ch. 183 is in words and figures as follows:

"Any person who shall keep open his shop, warehouse or workhouse, or shall do any manner of labor, business or work, except only works of necessity and charity, or be present at any dancing or public diversion, show or entertainment, or take part in any sport, game or play, on the first day of week, shall be punished by fine not exceeding ten dollars; and such day shall be understood to include the time between the midnight preceding and the midnight following the said day, and no civil process shall be served or executed on said day."

The statutes in force in Oklahoma relating to Sunday or the first day of the week are in words and figures as follows: .

"The first day of the week being by very general consent set apart for rest and religious uses, the law forbids to be done on that day certain acts deemed useless and serious interruptions of the repose and religious liberty of the community." (Sec. 2057, Comp. Laws Okla. 1909; sec. 1886, St. 1890.) "Any violation of this prohibtion is Sabbath-breaking." (Sec. 2058, Comp. Laws 1909; sec. 1887, St. 1890.) "Under the term 'day,' as employed in the phrase 'first day of the week,' in the seven sections following is included all the time from midnight to midnight." (Sec. 2059, Comp. Laws 1909; sec. 1888, St. 1890.) "The following are acts forbidden to be done on the first day of the week, the doing of any of which is Sabbath-breaking, 1st. Servile labor. 2nd. Public sports. 3rd. Trades, manufactures and mechanical employments. 4th. Public traffic. 5th. Serving process, unless authorized by law so to do." (Sec. 2060, Comp. Laws 1909; sec. 1889, St. 1890.) "All manner of servile labor of the first day of the week is prohibited, excepting works of necessity or charity." (Sec. 2061, Comp. L. 1909; sec. 1890, St. 1890.) "It is a sufficient defense, in proceedings for servile labor on the first day of the week, to show that the accused uniformly keeps another day of the week as holy time, and does not labor upon that day, and that the labor complained of was done in such manner as not to interrupt or disturb other persons in observing the first day of the week as holy time." (Sec. 2062, Comp. Laws 1909; sec. 1891, St. 1890.) "All shooting, sporting, horse racing, gaming or other public sports, upon the first day of the week, are prohibited." (Sec. 2063, Comp. L. 1909; sec. 1892, St. 1890.) "All trades, manufactures and mechanical employment, upon the first day of the week, are prohibited." (Sec. 2064, Comp. L. 1909; sec. 1893, St. 1890.)

"All manner of public selling, or offering, or exposing for sale publicly, of any commodities, upon the first day of the week, is prohibited, except that meats, milk and fish may be sold at any time before nine o'clock in the morning, and except that food may be sold to be eaten upon the premises where sold, and drugs and medicines and surgical appliances may be sold at any time of the day." (Sec. 2065, Comp. L. 1909; sec. 1894. St. 1890.) "All service of legal process of any description whatever, upon the first day of the week, is prohibited. except in cases of breach of the peace, or apprehended breach of the peace, or when sued out for the apprehension of a person charged with crime, or except where such service shall be specially authorized by law." (Sec 2066, Comp. L. 1909; sec. 1895, St. 1890.) "Every person guilty of Sabbath-breaking is punishable by a fine of one dollar for each offense." (Sec. 2067, Comp. L. 1909; sec. 1896, St. 1890.)

Said sections are set out in order that it may be seen what acts or labor on the part of subscribers of said telephone exchange would be legal when performed on Sunday. That is essential in order to determine what service on Sunday on the part of the appellant to be afforded the public would be reasonably necessary. The requiring of the operating of said exchange between the hours of 9 a. m. and 2 p. m. on Sundays in a town of 300 people, when works of charity and necessity would not reasonably require the use of a telephone during such period, would be not only unreasonable but also against public policy. If this order had merely required the telephone exchange to be kept open after a reasonable hour on Sunday morning until 9 o'clock and thereafter from 2 o'clock in the afternoon until 4 o'clock on said date, in view of the statutes in force in this state relating to Sunday, we would not disturb the same. However, it is essential that appellant operate its exchange during reasonable hours of every week day in order to comply with its charter and franchise obligations (*Mo. Pac. Ry. Co. v. State of Kansas*, 216 U. S. 262) ; but when it is sought by virtue of sec. 18 of art. 9 of the Constitution, which provides, "the commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all * * * transmission companies doing business in this state, in

all matters relating to the performance of their public duties and their charges therefor," to require such telephone exchange to be kept open and operated during the night time at a pecuniary loss, when the patronage of such company will not reasonably support the operation of said exchange during such night time, such order is unreasonable and unjust. If the rule that every telephone exchange within this state, whether in a village, town or city, must be operated at every minute during the day or night on Sunday and every other day of the week, regardless of the reasonable necessities therefor or the expense of such service, it would result in driving out these exchanges from small towns and villages, and only cities would have such facilities and conveniences. But the law makes no such requirement. The charter and franchise obligations require the public service corporation, if it be a telephone exchange, that it be operated during reasonable hours. If it be a railroad, that it operate at least one passenger train each way each day, etc. But when regulation goes further than this, and requires additional service, though it be at a pecuniary loss to the company, with few exception, the power of the 14th amendment to the federal Constitution intervenes and arrests such requirements.

Sec. 5 of art. 9 of the Constitution is in words and figures as follows:

"All telephone and telegraph lines, *operated for hire*, (italics ours.) shall each respectively receive and transmit each other's messages, without delay and discrimination, and make physical connections with each other's lines, under such rules and regulations as shall be prescribed by law or by any commission created by this Constitution, or any act of the Legislature for that purpose."

Only telephone lines "operated for hire" are placed by article 9 of the Constitution under the jurisdiction of the Corporation Commission. Rural or farmers' lines operated on the mutual plan, without any charges or toll for use of the line, are not subject to regulation by the commission.

The evidence offered to show that said exchange could not be kept open and operated during the night of every day of the week

without a pecuniary loss and that such service was not reasonably necessary was competent and should have been admitted.

Neither has any brief been filed on the part of the complainant or state or oral argument offered in support of the order of the commission. If the order was thought by the Attorney General's office to be correct, it was a duty imposed by law to defend the same. If the order was thought to be erroneous, a confession of error should have been made in order to expedite the business of this court, so that we can give our attention to other appeals.

The order of the commission is reversed, and this proceeding is remanded, with instructions to proceed in accordance with the law.

· All the Justices concur.