# KRIEGER et al. v. STATE.

No. A-2602.   Opinion Filed October 18, 1916.

(160 Pac. 86.)

1.  **SUNDAY—Statutory Provisions—Theory.**  Our Sabbath law proceeds upon the theory, entertained by most of those who' have investigated the subject, that the physical, intellectual, and moral welfare of mankind requires a periodical day of rest from labor, and, as some particular day must be fixed, the one most naturally selected is that which is regarded as sacred by the greatest number of citizens, and which by custom is generally devoted to religious worship, or rest and recreation, as this causes the least interference with business or existing customs.

2.  **SUNDAY—Observance of Other Day.**  Our Legislature has wisely and properly, however, refrained from interfering with or coercing the conscience of those who uniformly and conscientiously, and religiously keep another than the first day of the week as holy time, by exempting them from the penalties of the law; provided they work on the first day of the week in such a manner as not to interrupt or disturb other persons in observing the first day of the week as holy time.

3.  **SUNDAY — Observance of Other Day — "Servile Labor."**  In exempting persons who uniformly and conscientiously keep another than the first day of the week as holy time from the penalties of the statute, the Legislature intended to give them a substance and not a shadow; hence we hold the term "servile labor," as used in our Sunday statutes, to be used as synonymous with the term "secular labor."

4.  **SUNDAY—Observance of Other Day.**  Courts which hold that to require Sabbatarians to keep our Sunday does not prevent them from also keeping the seventh day overlook the fact that under the divine commandment, that these people are striving to obey, it is as imperative that they work six days as that they rest on the seventh and that if their conscience compels them to rest on day, and the law also forces them to rest another, they will thus be forced to violate the first provision of the commandment they are consciously attempting to keep.

*Appeal from County Court, Blaine County*
*Ed. Baker, Judge.*

. G. J. Krieger and another were convicted of violating the Sabbath law, and appeal.  Reversed and remanded, with directions to dismiss.

*William O. Woolman,* of Watonga, and *Cyrus Simmons,* of Knoxville, Tenn., for plaintiffs in error. ·

*R. McMillan,* Asst. Atty. Gen., and *Homer N. Boardman,* of Oklahoma City, for the State.

BRETT, J.   The plaintiffs in error in this case were prosecuted and convicted in the county court of Blaine county for violating our Sabbath or Sunday laws.   It appears from the record that they were conducting a general mercantile business at Hitchcock, Okla., and exposed their merchandise for sale on Sunday; that this was done in an orderly, peaceable and quiet way.   And there is no complaint that it was done in such manner as to interrupt or disturb other persons in observing Sunday or the first day of the week as "holy time."   It also appears that plaintiffs in error are and were Seventh Day Adventists, and uniformly and religiously observed Saturday, or the seventh day of the week, as a day of rest and "holy time."

(1-3)   Counsel for both plaintiffs in error and the state have filed able and elaborate briefs.   But as we view the situation, the question presents a very simple proposition, and turns on the legislative intent as expressed in section 2406, Revised Laws 1910.   After designating the first day of the week as the Sabbath, and declaring that Sabbath breaking shall consist:   First of "servile labor, except works of necessity or charity;" and second, "trades, manufactures and mechanical employments"—the Legislature then makes an exception, and in section 2406 provides that:

"It is a sufficient defense in proceedings for servile labor on the first day of' the week, to show that the accused uniformly keeps another day of the week as holy time, and does not labor upon that day, and that the labor complained of was done in such manner as not to interrupt or disturb other persons in observing the first day of the week as holy time."

Now the question is, What did the Legislature contemplate by the term "servile labor" in this exception?   It is loosely stated by some courts that the term "servile labor" is infelicitous.   But

there is no such thing as "servile labor" in this country, and has not been for years; and the term is not only "infelicitous" but is obsolete and meaningless, as applied to present conditions. And if our statute should be limited to the literal meaning of the term, then neither the prohibition nor exception in the statute could apply to any class of labor existing today, either in this state or the nation. The word "servile" pertains to slaves, to those held in subjection and enslaved, and no such thing as that exists today in our nation. But our legislature certainly had in mind some existing character or class of labor to which they intended that both the prohibition and the exception should apply, and we think must have intended to use the word "servile" as synonymous with secular. It would be highly improper to strike down a statute so vital as this as meaningless, unless it should be impossible, by any reasonable construction, to ascertain the Legislative intent. This law, as stated by an eminent jurist—

"* * * Proceeds upon the theory, entertained by most of those who have investigated the subject, that the physical, intellectual, and moral welfare of mankind requires a periodical day of rest from labor, and, as some particular day must be fixed, the one most naturally selected is that which is regarded as sacred by the greatest number of citizens, and which by custom is generally devoted to religious worship, or rest and recreation, as this causes the least interference with business or existing customs."

But our Legislature, we think, wisely and properly, by the provisions of section 2406, Revised Laws, 1910, exempted any one who "uniformly keeps another day of the week as holy time, and does not labor upon that day" from the penalties of this statute; provided, such person who uniformly and religiously keeps another day as holy time works on the first day "in such manner as not to interrupt or disturb other persons in observing the first day of the week as holy time." The writer of this opinion conscientiously and religiously believes that Sunday, or the first day of the week, is the day upon which all persons should rest; and is the day that should be observed as holy time by all

Christians; in commemoration of the greatest fact in our religion, the resurrection of our Lord. But I cannot, and would not if I could, make my conscience the standard of my brother. We are all fallible, and I would not assume the responsibility of forcing him to adipt my faith; for, should I be wrong, my responsibility would then be doubled. And the legislature intended to refrain from interfering with or coercing the conscience of those who uniformly and conscientiously keep another day than the first day of the week as holy time, by the provisions of section 2406. And we think this is in harmony with the spirit and genius of our government. And when our legislators exempted persons who uniformly, conscientiously, and religiously keep another day from the penalties of the statute, they intended to give them a substance and not a shadow. Hence we think the legislature intended to use the word "servile" as synonymous with "secular." And in this we are sustained by *Gladwin v. Lewis,* 6 Conn. 49, 16 Am. Dec. 33. But even without a precedent, we think, no other construction could give vitality to the real legislative intent.

(4) But it is facetiously argued by some courts that to say to these people they shall keep our Sunday does not prevent them from also keeping the day they regard as "holy day." But these courts overlook the fact that under the divine commandment these people are striving to obey it is just as imperative that they work six days as it is that they rest on the seventh. And if their conscience compels them to rest one day, and the law forces them to also rest another, they would thus be forced to violate the first provision of the commandment they are attempting conscientiously to keep.

For these reasons, and others that might be added, we think the judgment should be reversed.

The judgment is therefore reversed, and the cause remanded, with directions to dismiss the case.

DOYLE, P. J., and ARMSTRONG, J., concur.