## STATE v. CLINT SMITH.

No. A-2497.   Opinion Filed June 16, 1921.
(198 Pac. 879.)

(Syllabus.)

Sunday—Conducting Moving Picture Show on Sunday as "Servile Labor". Ordinarily, the selling of admission tickets and conducting on Sunday in an orderly manner a moving picture show is not "servile labor," and not prohibited within the meaning of section 2404, Rev. Laws 1910, and the first subdivision of section 2405, as amended by Laws 1913, c. 204.

Appeal from County Court, Craig County; E. M. Probasco, Judge.

Clint Smith was informed against for Sabbath breaking, by selling tickets for a moving picture performance. Demurrer to the information was sustained, and the State appeals. Affirmed, and cause dismissed.

R. McMillan, Asst. Atty. Gen., for the State.

W. P. Thompson, for defendant in error.

A. O. Harrison, amicus curiae.

BESSEY, J.  In this case an information was filed in the county court of Craig county, charging that Clint Smith, on the 17th day of March, 1915, committed the crime of Sabbath breaking, in that he willfully and unlawfully performed certain servile labor, to wit, sold tickets at and for a certain moving picture show and performance on the first day of the week, commonly called Sunday; said servile labor aforesaid not being a work of necessity or charity.  To this information the defendant filed a demurrer, alleging three grounds, viz.: First, that the allegations in said information do not state a public offense against the laws of the state of Oklahoma; second, that the facts stated in said information are not sufficient to charge the defendant of any offense against the laws of the state of Oklahoma; third, that the facts set forth in said information do not constitute "servile labor," as contemplated by the laws of the state of Oklahoma.  On the 20th

day of April, the court sustained the demurrer, from which ruling the state appeals.

The common law, adopted by the states, does not prohibit citizens from pursuing ordinary labor on Sunday nor from engaging in or conducting innocent amusements. If it is unlawful in this state to operate a moving picture show on Sunday, it must be so by reason of the express or necessarily implied provisions of our Sunday statute. City of Marengo v. Rowland, 263 Ill. 531, 105 N. E. 285, Ann. Cas. 1915C, 198; 25 R. C. L. 1414.

In approaching the question of whether or not the conducting of a moving picture entertainment on Sunday is a violation of our Sunday statute it becomes necessary to determine the meaning and legislative intent of a number of words and terms used in the statute, indicative of what is prohibited. In analyzing our statutes on this subject we find that the judicial decisions of many of the other states touching on the violation of Sunday laws are of little aid in construing our Sunday statutes, for the reason that the language used and the manifest legislative intent in so many states differ from our own. In most of the states in recent years the Sunday statutes have been frequently modified to meet the exigencies of modern conditions. Our statutes on this subject at the present time are as follows:

Section 2404, Rev. Laws 1910: "The first day of the week being by very general consent set apart for rest and religious uses, the law forbids to be done on that day certain acts deemed useless and serious interruptions of the repose and religious liberty of the community. Any violation of this prohibition is Sabbath breaking."

Section 2405 (as amended): "The following are acts forbidden to be done on the first day of the week, the doing of any of which is Sabbath breaking:

"First. Servile labor, except works of necessity or charity.

"Second. Trades, manufactures and mechanical employment.

"Third. All shooting, horse racing or gaming.

"Fourth. All manner of public selling, or offering, or exposing for sale publicly, of any commodities, except that meats, bread, and fish may be sold at any time before nine o'clock in the morning, and except that food and drink may be sold to be eaten and drank upon the premises where sold, and drugs, medicines, milk, ice and surgical appliances and burial supplies may be sold at any time of the day" Laws 1913, c. 204.

"Sec. 2406. It is sufficient defense in proceedings for servile labor on the first day of the week, to show that the accused uniformly keeps another day of the week as holy time, and does not labor upon that day, and that the labor complained of was done in such manner as not to interrupt or disturb other persons in observing the first day of the week as holy time."

Section 2404, supra, has never been judicially construed in a case of this character. From the reading of this section it seems to be a preliminary declaration of a policy to become effective in the manner pointed out in the other sections of the statutes following. It was so construed, where an order of the corporation commission was made, compelling a telephone exchange to remain open on Sunday. Twin Valley Tel. Co. v. Mitchell, 27 Okla. 388, 113 Pac. 914, 38 L. R. A. (N. S.) 235, Ann. Cas. 1912C, 582.

Passing on, then, to the more definite prohibitions contained in section 2405, we find, excepting works of necessity or charity, all persons are forbidden from pursuing on Sunday: First, servile labor; second, trades; third, manufacturing or mechanical employment.

At the outset we must determine whether a moving picture exhibition on Sunday comes within the saving clause of the statute, "excepting works of necessity or charity." It is too clear for argument that ordinarily a moving picture

show is not a work of charity. Can it, under any circumstances, be a work of necessity?

"Necessity" is an elastic term. It does not mean that which is indispensable, but it means something more than that which is merely useful or advisable or desirable. No doubt a thing which is merely useful or desirable to the residents of a town might be a necessity to the residents of a great city. So, also, that which was a luxury a century ago may have become a necessity now. There is always, however, a tendency which should not be sanctioned to claim accustomed luxuries as necessities, falling within the exception of the law. State v. James, 81 S. C. 197, 62 S. E. 214, 18 L. R. A. (N. S.) 617, 128 Am. St. Rep. 902, 16 Ann. Cas. 277; 1 Amer. Rul. Cases, 777.

From the great number of these shows now being operated in the various towns and cities of the state it is fair to assume that they are approved as desirable by the multitudes that patronize them, but we cannot say that they are ordinarily necessary, in the sense that it is sometimes necessary to operate trains on Sunday, or to deliver a Sunday newspaper, or to operate an automobile on Sunday for the pleasure or for the health and comfort of the family, or to operate a telephone exchange.

It may be argued that in a mining camp, where men toil all week underground, or at a manufacturing plant operated day and night, where there no other means of innocent entertainment or recreation, moving picture shows might be a necessity. Doubtless, under such circumstances such entertainments are desirable to the great mass of toilers; but it has been held that in order to break the monotony of army life such exhibitions are not a necessity at a great army camp. Rosenbaum v. State, 131 Ark. 251, 199 S. W. 388, L. R. A. 1918B, 1109.

Moving picture exhibitions are a form of amusement not in existence at the time of the enactment of our original Sunday law, and the amendment of May 17, 1913, makes no reference to this or like forms of amusement. The fact, however, that some form of amusement, sport, business, or occupation has sprung into existence since the passage of the law would make no difference, if they came within the plain provisions of the spirit and letter of the statute. 25 R. C. L. 1427.

Moving picture shows are, or should be, instructive as well as entertaining, but the fact that many people can more conveniently attend them on Sunday does not bring them within the exception of being a necessity. It makes no difference whether this court thinks that picture shows on Sunday are in the main desirable, or that a majority of the people so consider them; it is for the Legislature to say whether or not they shall operate on Sunday. Capital Theatre Co. v. Com., 178 Ky. 780, 199 S. W. 1076. Interpolating a personal view of the writer, it would be well to suppress many of them that depict acts of crime and sexual suggestions on week days as well as on Sunday. This class of exhibitions has been much criticized by persons who, at the same time, encourage them by their patronage.

We hold, therefore, that ordinarily a moving picture show given on Sunday does not come within the exception of our statute as being a work of necessity or charity.

We have, in some measure, a statutory guide in interpreting and defining words and phrases used in a statute. Section 2914, Rev. Laws 1910, provides:

"Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears."

With this rule of interpretation in mind, we will next endeavor to ascertain the meaning of "servile labor," and whether or not the conducting of a moving picture show is servile labor. Labor, in its usual sense, may be defined as "physical or mental toil; bodily or intellectual exertion, done wholly or partly for a purpose other than the pleasure derived from its performance." "Servile labor, applied to modern conditions, pertains to physical work; labor requiring bodily rather than mental effort; menial labor." Webster's Int. Dict. 1927; Standard Dictionary. According to this definition, a person who cranked his Ford on Sunday would be engaged in servile labor, though it might be a work of necessity or charity; while a bookkeeper who on Sunday pores over his books, invoices and sales slips, in order to make the books balance for the previous week, would not be engaged in servile labor. The statutes of most states use the words "labor," "work and labor," or "usual labor," without the qualifying adjective "servile," or any word of like import. This may seem like a captious distinction, but applying the statutory rule of interpretation of words, quoted above, and from aught that we can comprehend from the language of the act as a whole, the Legislature must have intended to make a distinction between manual and mental labor, otherwise they would have dispensed with the word "servile" and prohibited all labor, both mental and physical. This court has no right by judicial construction to amend a statute, and in this case say that the word "servile" means nothing, or to give this adjective a strained or fanciful interpretation.

So far as we have been able to find, of the states having a Sunday law in the same language as our statute, as in the Dakotas and New York, only New York has defined "servile labor," where it has been judicially construed a number of times. And since we have adopted what is known as the Fields Criminal Code, of which our Sunday law is a part,

originating in the state of New York and written by a legislative commission presided over by David Dudley Fields, which completed its work in 1865, it would seem that the judicial construction placed on words and phrases contained in this Code by the courts of New York, the state of its origin, should be persuasive, if not binding, on the courts of this state; and especially so when none of the other states adopting this Code have given it a different construction. Ex parte Bowes, 8 Okla. Cr. 201, 127 Pac. 20.

In the case of Campbell v. Inter. Ins. Ass'n., 17 N. Y. Sup. Ct. 316, it was held that "servile labor" meant one thing, and that "working," without that adjective, meant another; that the latter was a comprehensive word, intended to cover the efforts of both mind and body, while the former related to physical labor of a character more or less menial.

In the case of Watts v. Van Ness, 1 Hill (N. Y.) 76, it was held that the usual occupation of a clerk in an attorney's office was a species of servile labor, and constituted working, for which, when done on Sunday, he could recover no wages. It will be observed that the New York statute, at the time this decision was rendered, differed from ours, in that it contained both expressions, "servile labor" and "working," while ours contains the former only.

Where a person contracted to take lessons on Sunday to perfect himself in a special art of photography, it was urged that such services were not of a servile nature. The court pointed out that the General Assembly had amended the law (Session Laws N. Y. 1883, c. 358) so as to include all labor, and inferentially held that if it were not for such amendment the defense for nonpayment for services would be good (Bilordeaux v. Lithographing Co., 9 N. Y. Supp. 507).

In another New York case it was held that the loading of horses for shipment onto a sloop from the dock on Sunday

was "servile" labor, and under the circumstances in that case not necessary, because the loading could as well have been postponed until the next day.    Merritt v. Earle, 29 N. Y. 120, 86 Am. Dec. 292.

These New York cases are cited to show that there was a well-recognized distinction between "servile labor" and mere work or labor, and that this qualifying adjective had a fixed, settled meaning in the state from which this part of our Code was derived.    Later the word "servile" was stricken from the New York statute, and the Sunday law there has since been amended in many other particulars. These changes must be kept in mind in analyzing the later New York decisions construing the Sunday statutes of that state, modified by amendments in recent years.

In Connecticut it was provided by statute that on Thanksgiving Day all persons should abstain from all kinds of "servile labor."    Another portion of the statute provided:

"That no person on the Sabbath shall do any 'secular business,' works of necessity or mercy excepted."

Upon the question of the validity of civil process served on Thanksgiving Day, the court held that the words "servile" and "secular" were practically synonymous.    The question at issue, having reference to Thanksgiving Day, and not pertaining to a violation of the Sunday law, the defining of the word "secular" was dictum and unnecessary, because that word applied alone to Sabbath breaking.    In this case it was held, by a divided court, that court process served on Thanksgiving Day was void. Gladwin v. Lewis, 6 Conn. 49, 16 Am. Dec. 33.

The word "secular," as applied to labor and applicable to this case, is defined in Webster's International Dictionary as "labor not of a religious, spiritual or holy character; relating to temporal, as distinguished from religious interests."

The Standard Dictionary defines "secular" as "pertaining to temporal things of this life."

As has been pointed out, the New York courts have held that the word "servile" has a distinct meaning, so intended by the lawmakers, while the Connecticut court practically held that it meant nothing; the term "secular business" appearing in one statute being equivalent to the term "servile labor" appearing in another section of the statute. We may well inquire here, if this adjective had no particular significance, why change the language of the statute by judicial construction by transposition of adjectives?

Our court, in the case of Krieger v. State, 12 Okla. Cr. 566, 160 Pac. 36, seems to have followed the Connecticut case, and this too in the face of the fact that our statutes say that the words shall be given their ordinary meaning, unless a contrary purpose plainly appears; and in the face of the fact that the parent state from which we borrowed this law had given it a contrary, and to our mind more rational construction. We think, and standard dictionaries indicate, that there is a marked difference between the meanings of the words "servile" and "secular," and that the lawmakers must have had that difference in mind when they qualified the word "labor" by the word "servile." For instance, it may have been the intention of the framers of this statute to prohibit a blacksmith from working on Sunday, for the reason that the pounding of his anvil and the keeping of his shop open on Sunday would disturb others who wished to keep Sunday as a holy day; the blacksmith would be engaged in servile labor. Likewise, on Sunday a bookkeeper, a judge, a clergyman, or a lawyer might clean the spark plugs of his automobile, pull weeds from his garden, or cut the grass with his lawnmower; this, too, would be servile labor. On the other hand, if a bookkeeper, a judge, a clergy-

man, or a lawyer should go to his office and close his door and engage in mental labor in such a way as not to disturb others in the quiet enjoyment of their Sabbath, this would not be servile labor within the meaning of the statute.

Sometimes we can more easily determine what a term means by ascertaining what it does not mean. An abstractor of titles, a draftsman, an architect, a building contractor, a railroad conductor, a dentist, a photographer, superintendents or managers of shops we think would not ordinarily be engaged in manual or servile labor. Work done in the professions and fine arts is not usually classified as manual or menial labor. 5 Words & Phrases, First Series, p. 4343. 24 Cyc. 809; 16 R. C. L. 413; City of New Orleans v. Robira, 42 La. Ann. 1098, 8 South. 402, 11 L. R. A. 141.

A Sunday law should not be a religious or an ecclesiastical act to promote religious doctrine, or religious rites or ceremonies. Ours is purely a civil government, which guarantees to every person the right to espouse and practice any religious creed he may choose, or to espouse and practice none. Good morals are of course encouraged, and enter into the foundation and superstructure of our free institutions.

The case of Krieger v. State, supra, was a case where a member of the religious sect known as Seventh Day Adventists was prosecuted for keeping his store open on Sunday. It was shown that the defendant, in keeping with the tenets of his faith, uniformly kept Saturday, the seventh day of the week, as a day of rest and holy time; that he performed no labor and did no business on that day; and that he kept his store open on Sunday in a quiet and peaceable manner. It was held in that case that because of his religious belief that Saturday was the day ordained by God as a day of rest it came within the provisions of our statute (section 2406, R. L. 1910) exempting him from punishment for

19—C. R. 7

such servile labor on Sunday. There was nothing in this case calling for a definition of servile labor, as distinguished from or synonymous with secular labor, because in either case the defendant was exempt from punishment by the plain, explicit provisions of the statute, providing:

"It is a sufficient defense in proceedings for servile labor on the first day of the week, to show that the accused uniformly keeps another day of the week as holy time, and does not labor on that day."

In view of the fact that the finding of the court in this case that the words "servile labor" and "secular labor" are synonymous was, under the circumstances in the case, unnecessary, such finding was in a sense dictum, and as such is not binding as a precedent. A judicial decision, in order to be a precedent and guide in determining issues in subsequent cases, involves only such points as are actually in point in the case decided, and not what is said by the court or some judge on points not necessarily involved. Such expressions, being mere obiter dicta, should not be considered as precedents. 7 R. C. L. 1003, § 31.

In the Connecticut case, supra, the question was on the construction of the validity of civil process issued and served on Thanksgiving Day, and construction of the meaning of the words used in the Sunday law was not involved. In the Oklahoma case the decision hinged on the fact that the defendant was a Seventh Day Adventist, and came within the exception of section 2406, supra, exempting persons who keep some other time as holy day from the penalties imposed for working on Sunday. The decision in that case did not involve an interpretation of the words "servile" and "secular," because the defendant was plainly, under the testimony, within the exception granted to persons who habitually keep another day as holy time.

For the reasons stated we think the findings of the courts in these two cases that "servile" and "secular" are synonymous are not supported by the best reason and authority, and this court will not be bound to follow them as an established rule of judicial construction in this or similar cases.

At the time our Legislature amended the Sunday law of this state (act of May 17, 1913), adding to the prohibitions then existing, horse racing, hunting, and gaming, and providing that the public selling of commodities should be restricted, moving picture shows were flourishing in all parts of the state, and in many places moving picture exhibitions were being held on Sunday. We think it is fair to assume that if it was the desire of the Legislature to prohibit such exhibitions on Sunday it would have then said so in specific terms. Penal statutes cannot be enlarged by implication or extended by inference. This court is without power to amend or repeal a general statutory provision, although the court may disapprove of some of its provisions or omissions. White v. State, 4 Okla. Cr. 163, 111 Pac. 1018, City of Shawnee v. Landon, 3 Okla. Cr. 440, 106 Pac. 652.

This case has been well and ably briefed by the Attorney General for the state, assisted by counsel for the state in other cases, amicus curiae. In a number of cases pending in this court the defendants are charged with violating the Sabbath day by performing servile labor in operating moving picture exhibitions on Sunday. In a number of other cases it is charged that such defendants are guilty of selling a commodity to the public, to wit, a privilege, in violation of our Sunday law. In still others it has been urged by the Attorney General that the conducting of such exhibitions might be a trade, within the meaning of the second subdivision of section 2405, supra. In this case the construction of the term

"servile labor" alone is involved, and a construction of the other terms mentioned must be deferred until a case is reached involving these other terms.

Counsel for the state assume, at the beginning, that the words "servile labor" are obsolete and meaningless, and that the word "labor", without the qualifying adjective, should be read into the statute, or that possibly the words "secular labor" should be substituted. This conclusion was in a measure justified by reason of the expression of the court in the decision in the Krieger Case, supra. As before stated, however, this declaration cannot stand in the face of sound reason and established judicial construction. Under the conditions here this court has no right to legislate words out of the statute, or to substitute other words that may seem more appropriate, and especially is this the case where the Legislature itself has recently revised the statute.

Our own court, in the case of Twin Valley Telephone Co. v. Mitchell, 27 Okla. 388, 113 Pac. 914, 38 L. R. A. (N. S.) 235, Ann. Cas. 1912C, 582, held that the girl at the switchboard in a rural telephone exchange must remain on duty on the Sabbath, during such fixed and reasonable hours as will give reasonable telephone service to subscribers. It would seem that the work at a telephone switchboard would be more exacting and fatiguing than to sit in a booth at the entrance to a moving picture show and sell tickets. Neither class of work, in our judgment, is of a menial or servile character. It may be argued that rural telephone service is a necessity. Possibly so; in many cases it is at least desirable. Yet in many communities they have no such service, and in others none on Sunday. In that sense it is not a "necessity."

We pass now to a brief analysis of the decisions chiefly relied upon by the state. In the case of Quarles v. State, 55 Ark. 10, 17 S. W. 269, 14 L. R. A. 192, cited in the briefs

for the state, it was held that the managing of a theatre and selling tickets therefor was in violation of a statute prohibiting all labor on Sunday, excepting the customary household duties of daily necessity, comfort, or charity. It will be seen that the language and apparent legislative purpose of this statute differed materially from ours. In the case of City of Topeka v. Crawford, 78 Kan. 583, 96 Pac. 862, 17 L. R. A. (N. S.) 1157, 16 Ann. Cas. 403, involving a statute similar to the one last mentioned, prohibiting all kinds of labor on Sunday, it was likewise held that the opening, managing, and selling theatre tickets is "labor" within the meaning of the statute.

In the case of People v. Joyce, 174 App. Div. 574, 161 N. Y. Supp. 771, construing a statute prohibiting hunting, fishing, playing cards, horse racing, gaming, or other public sports, exercises, or shows, the court held that the prohibition included ordinary picture shows.

The statutes of Washington specifically prohibit the operation of playhouses and theatres on Sunday. The decisions cited from that state hold that the prohibition covers moving picture shows.

In the case of People ex rel. Moffatt v. Zimmerman, 48 Misc. Rep. 203, 95 N. Y. Supp. 136, at a time when the New York statute contained the words "servile labor," it was held that selling groceries on Sunday was servile labor, and a violation of the Sunday statute as it then existed.

The references made in the briefs of ancient Biblical, Babylonian, and Chaldaic history and philosophy, showing the origin and early evolution of the Sabbath as a day of rest, recreation, and religious observances, may be passed here as being more properly a subject for the consideration of legislators, political economists, priests, and clergymen.

It appears from Biblical writings that when our Savior was here on earth there were 39 kinds of labor prohibited by Jewish law, and when the Scribes and Pharisees sought to enforce one of these provisions by arresting some of the Lord's disciples for gathering corn on the Sabbath day to appease their hunger, the Master then announced the doctrine that the Sabbath was ordained for man, and not man for the Sabbath.      Matt. xii, 1-14.

We assume that it was in this spirit and for this purpose that our lawmakers made the declaration contained in section 2404, supra, forbidding the doing of useless acts that might seriously interrupt the repose and religious liberty of the community, and then in the following sections more definitely stated the particular acts forbidden.  We assume that all other acts not within the purview of the statute would not be considered a criminal interference with the repose and religious liberty of the community.  If abuses of this character should exist or hereafter arise, the Legislature may add to the list of things now prohibited by appropriate legislation.  That is a legislative and not a judicial function.  If the lawmakers want to suppress moving pictures on Sunday, they can easily do so by including them in the list of acts prohibited on that day.

We therefore come to the conclusion that the operation of a moving picture show is not "servile labor," and not prohibited, within the meaning of this portion of our Sunday statute, and the order of the court sustaining the demurrer to the information is sustained, and the cause ordered dismissed.

DOYLE, P. J., concurs.

MATSON, J., disqualified and not participating.