*Ex parte* T. J. MONROE.

No. A-2888.    Opinion Filed January 13, 1917.

(162 Pac. 233.)

1.    **TRIAL—Constitutional Safeguards.** The constitutional rights and legal presumptions and safeguards thrown around the accused with a view of protecting the innocent are as much a part of the law as the statute which denounces crime and prescribes its punishment. It is only the mob that administers summary vengeance. And if the accused in court could be stripped of all the constitutional rights and legal safeguards provided by the law to protect the innocent, there would be no difference between such a tribunal and the methods of the mob.

    We must not, therefore, become violators of the law in our zeal to enforce it. For every act of injustice and oppression done under the guise of the law is a blow at the very foundations of the temple of justice.

2.    **JURY—Jury Trial—Police Court.** Under Bill of Rights, sec. 20, the accused in all criminal prosecutions has the right to a trial by "an impartial jury of the county in which the crime shall have been committed." It is therefore apparent that it was never contemplated by our legal system that police courts should try criminal matters, but only quasi criminal matters, since no provision is made by which a jury "of the county" may be impaneled in such courts. The framers of the Constitution specifically made it possible for justices of the peace to impanel a jury "of the county," by making their jurisdiction coextensive with the county. They have all the county to draw from, and can draw from all of it, or any part they see fit; but we know of no provision extending the jurisdiction of a police court beyond the corporate limits.

This, we think, was neither accidental nor an oversight, but was intended by the framers of the Constitution to, as far as possible, insure to the accused the kind of jury designated, namely, "an impartial jury," and to hedge against the professional juror who would naturally become a "hanger-on" around a police court, to draw his pay and do the behests of the presiding judge of that tribunal, and thus defeat the very purpose for which the jury system was called into existence.

:3. **MUNICIPAL CORPORATIONS — Police Courts — Jurisdiction.** From every angle and viewpoint it is clear that police courts can only try that class or grade of offenses called petty offenses, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose. And, however convenient it may appear to permit them to try without a jury criminal offenses, in the language of Blackstone, "let it be remembered that these inroads upon the sacred bulwarks of the nation are fundamentally opposite to the spirit of our Constitution, and that, though begun in trifles, the precedent may gradually increase and spread to the utter disuse of ' juries in questions of the most momentous concern."

4. **SAME—Ordinances—Scope Of.** A city may pass ordinances against petty offenses that are detrimental to the health, peace, safety, property rights, good morals, or finer sensibilities of its citizens; but the penalties it may impose are limited; hence, if the matter prohibited by a city ordinance is also an offense against the state, the offender may be turned over to the state for prosecution, and cannot plead jeopardy by reason of the penalty imposed by the police court.

5. **SAME—Police Courts—Jurisdiction.** The jurisdiction of a court is fixed by what might, under given premises, be done, and not by what actually is done. For instance, if a justice of the peace should try even a civil case, in which the amount in controversy exceeded his jurisdiction, even if he rendered judgment for only $5, that fact would not cure the defect or confer jurisdiction; for jurisdiction depends, not on what is done, but on what might be done; and the test of the jurisdiction of a police court in any particular case is not what is done, but what, under the ordinance, might be done.

Application of T. J. Monroe for writ of *habeas corpus.* Writ allowed, and petitioner discharged.

*Albert S. Gilles,* for petitioner.

*B. D. Shear,* Municipal counselor, *Frank Watson,* Asst. Municipal Counselor, and *E. E. Blake,* for respondent.

BRETT, J.   The petitioner, T. J. Monroe, filed his petition in this court for a writ of *habeas corpus*, alleging that he was unlawfully restrained of his liberty by W. B. Nichols, chief of police of Oklahoma City.

The material and admitted facts are that on the 2d day of December, 1916, the petitioner was arrested by a police officer of Oklahoma City and charged in the police court of said city with illegally transporting intoxicating liquor; that he was tried and pronounced guilty by the police judge of said city, without the intervention of a jury, and sentenced under and by virtue of a city ordinance to 90 days' imprisonment in the city jail, and to pay a fine of $99. And he insists that under this proceeding he was deprived of his liberty without due process of law, and denied the constitutional right of a trial by jury, and that therefore the judgment and sentence is void.

This presents the identical question passed upon in an opinion by this court in *Ex parte Tom J. Johnson,* *ante,* p. 30 (161 Pac. 1097), which fully covers the issue presented by this case. But we write this opinion in response to a request in the brief filed in this case that we make clear the scope and authority of the police court.

We will say first that there is in every community and state three widely divergent sentiments with reference to the enforcement of law: First, there are those who believe in the enforcement of the law; second, those who do not believe in the enforcement of the law; and, third, those who believe in the enforcement of only a part of the law. The first class believe in the conviction and punishment of the guilty, but do not lose sight of the fact that the constitutional rights and legal presumptions and safeguards thrown around the accused, with a view

of protecting the innocent, are as much a part of the law as the statute which denounces crime and prescribes its punishment. But the third class, in their zeal to retard crime and punish criminals, overlook this fact, and apparently have no interest in that class of laws, but seek only to invoke the punishment prescribed by statute upon the head of the accused. But this kind of proceeding cannot be called the enforcement of law, for it is only the mob that administers summary vengeance; and if the accused in court could be stripped of all constitutional rights and legal safeguards provided by the law to protect the innocent, what would be the difference between such a tribunal and the methods of the mob? Such a court, instead of being an instrument for the enforcement of the law, would be a means of oppression, and of bringing the law into contempt. We must not, therefore, become violators of the law in our zeal to enforce it. For every act of injustice and oppression done under the guise of the law is a blow at the very foundations of the temple of justice. And under the facts in the case at bar we have no doubt that the petitioner was denied his constitutional rights, and deprived of his liberty without due process of law, and that the judgment and sentence pronounced against him is void.

Section 20 of the Bill of Rights guarantees to every citizen that "in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed." This is almost the identical language of the Sixth Amendment to the Constitution of the United States; and to disregard this right of the citizen we would also have to override section 7 of the Bill of Rights, which declares that "no person shall be deprived of life, liberty

or property without due process of law"; for it is universally held that under the constitutional provisions guaranteeing to the accused the right of trial by jury "a jury is an essential part of every tribunal for the trial of criminal cases," and therefore essential in such cases to due process of law. This is not a new doctrine, is not an innovation, but has been repeatedly announced and consistently adhered to, not only by many other courts, but also by the Supreme Court of the United States, the greatest and at the same time one of the most conservative of tribunals. *Reynolds v. United States,* 98 U. S. 148, 25 L. Ed. 244; *Callan v. Wilson,* 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223; *American Pub. Co. v. Fisher,* 166 U. S. 467, 17 Sup. Ct. 618, 41 L. Ed. 1079; *Thompson v. Utah,* 170 U. S. 343, 18 Sup. Ct. 620, 42 L. Ed. 1061; *Capital Traction Co. v. Hof,* 174 U. S. 5, 19 Sup. Ct. 580, 43 L. Ed. 873; *Black v. Jackson,* 177 U. S. 349, 20 Sup. Ct. 648, 44 L. Ed. 801; *Rassmussen v. United States,* 197 U. S. 516, 25 Sup. Ct. 514, 49 L. Ed. 862.

Hence the doctrine announced in *Ex parte Tom J. Johnson, supra,* which accords to every person accused of crime the constitutional right of a trial by jury, is not, as intimated by counsel, an innovation; but the innovation is that a police court should attempt to assume the jurisdiction of a court of record, and try and convict men of criminal offenses, and sentence them to penal servitude in the chain gangs, without the intervention of a jury.

It was never contemplated by our judicial system that police courts should have such jurisdiction; hence no provision is made by which they can impanel a jury. But we think the very section of the Bill of Rights (section 20) that guarantees to the accused in all criminal prosecutions a jury precludes the idea of a jury trial in a police

court by specifying that the jury provided for by that section shall be "an impartial jury," not of the city or jurisdiction in which the case is tried, but "of the county in which the crime shall have been committed." And this provision, we think, was neither accidental nor an oversight, but was intended by the framers of the Constitution to insure to the accused, as far as possible, the kind of jury designated, namely, "an impartial jury," and as far as possible to hedge against the professional juror, who would naturally become a "hanger-on" around a police court, to draw his pay, and do the behests. of the presiding judge of that tribunal, and thus defeat the very purpose for which the jury system was called into existence. When the Constitution says in one breath that in all criminal prosecutions the accused shall have a right to a trial by jury, and in the next breath makes it impossible for a police court to impanel a jury, it is clear that the framers of the Constitution intended to limit the jurisdiction of the police court to matters in which a jury was not contemplated. This is not in conflict with the statement in *Ex parte Tom J. Johnson, supra,* that "* * * the conclusion necessarily follows that the constitutional provisions guaranteeing to the accused the right of trial by jury secure the right of such a trial in the court having original jurisdiction." That statement does not say or mean that the police court has the right to impanel a jury, but only reduces to an absurdity the claim that it has the right to try criminal offenses; for if in such cases the right to a jury is secured "in the court having original jurisdiction," and the police court has no power to meet the requirements of that right, then it is clear that it is not the court that the framers of the Con-

stitution contemplated should have jurisdiction of such offenses.

But counsel insist that chartered cities may by ordinances provide for drawing a jury from the body of the county, but cite no provision of the Constitution or other authority in support of this assertion, and we know of none that will sustain it. The framers of the Constitution specifically made this possible for justices of the peace, by making their jurisdiction coextensive with the county. They have all the county to draw from, and can draw from all of it or any part they see fit, but we know of no provision extending the jurisdiction of a police court beyond the corporate limits.

The framers of our Constitution made such abundant provision for courts in this state to try criminal offenses that they doubtless thought it would never be necessary to call police courts to their assistance; hence they left them to fill the little niche that reason and experience has taught is peculiarly their own. And, however convenient it may appear to permit them to try without a jury criminal offenses, in the language of Blackstone:

"Let it be remembered that these inroads upon the sacred bulwark of the nation are fundamentally opposite to the spirit of our Constitution, and that, though begun in trifles, the precedent may gradually increase and spread, to the utter disuse of juries in questions of the most momentous concern." (4 Blackstone, Commentaries, 349, 350.)

And Mr. Story, that other great exponent of constitutional law, says:

"If the people are enlightened and honest and zealous in defense of their rights and liberties, it will be impossible to surprise them into a surrender of a single valuable appendage of the trial by jury." (2 Story, sec. 1785.)

In *Callan v. Wilson*, 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223, Justice Harlan says that no citizen can be put upon trial without a jury—

"except in that class or grade of offenses called petty offenses, which, according to the common law may be proceeded against summarily in any tribunal legally constituted for that purpose."

And the Seventh Amendment to the Constitution of the United States provides that:

"In suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

Then why and by what higher authority is it that a police judge should be permitted to take more than that from a citizen without a jury, and almost without the semblance of a trial?

It is our opinion, however, that a city may pass ordinances against petty offenses that are detrimental to the health, peace, safety, property rights, good morals, or finer sensibilities of its citizens. But our whole legal system contemplates that the penalties it may impose are limited. Hence it is generally held that, if the offense it has dealt with is also an offense against the state, the offender may then be turned over to the state, and cannot plead former jeopardy by reason of the penalty imposed by the police court. Why is this? One reason is because it is contemplated that the penalty the city may impose is so small that it is tantamount to no punishment for the offense; that it is so insignificant that it cannot be called jeopardy. Another reason is that the city and state for certain purposes are regarded as separate jurisdictions, and that the offender has offended against both jurisdictions. But, regardless of the question of separate jurisdiction, if the city could be permitted to assess a

penalty commensurate with the gravity of the offense, then no court and no rule of justice would permit the offenders to be punished again for the same offense. Hence from every angle and every possible viewpoint it seems our whole legal system is constructed around the idea that the police court is the most inferior and the most limited in jurisdiction of all tribunals. And, as has been well said, "all that is required" to solve the problem that has seemed to disturb some of our cities since the Tom J. Johnson opinion was announced "is that offenses against city ordinances be reduced from crimes to the place they formerly occupied, and the place contemplated by our legal system."

Counsel seem to argue that, regardless of the penalty provided by an ordinance, if the police judge should assess only a small penalty against the accused, that would obviate all objections to the jurisdiction and render the judgment pronounced valid. The answer to this is that jurisdiction is fixed by what might, under given premises, be done, and not what actually is done. For instance, if a justice of the peace should try even a civil case, in which the amount in controversy exceeded his jurisdiction, even if he rendered judgment for only $5, that fact would not cure the defect or confer jurisdiction, for jurisdiction depends not on what is done, but on what might be done. And the test of the jurisdiction of a police court in any particular case is not what is done, but what under the ordinance might be done.

In the case at bar we are of the opinion that under the proceedings had the petitioner was deprived of his liberty without due process of law, and that the writ should be awarded.

The petitioner is therefore discharged.

DOYLE, P. J., and ARMSTRONG, J., concur.