### Ex parte WILLIAM JOHNSON.

No. A-4076.    Opinion Filed Oct. 29, 1921.
(201 Pac. 533.)

(Syllabus.)

1.  **Municipal Corporations—Larger Powers of Cities Under Special Charter.** Within the limits prescribed by the Constitution and statute laws of this state, cities existing under a special charter form of government may have larger powers of self-government than are accorded to cities existing under general laws.

2.  **Sunday—Power of State or City to Prohibit Moving Picture Shows on Sunday.** It is within the authority of the state, in the exercise of its police powers, to prohibit moving picture shows on Sunday; and such authority may be, by general law or by special charter, delegated to cities in the exercise of local self-government.

3.  **Municipal Corporations—Necessity or Expediency of Specific Police Regulations Decided by Council or People.** It is for the lawmaking body of a municipality or for the people themselves, in the exercise of the initiative and referendum, to determine, within the bounds of reason, the necessity or expediency of specific police regulations, subject only to the limitations prescribed by the Constitution and statutes of this state.

4.  **Same—Further Regulations by City on Subject Covered by State Law.** Where the Legislature has made or may by general law make a specific police regulation, that fact of itself will not prevent the lawmaking power of a city from making further regulations on the same subject, not inconsistent with general laws. A municipality may move in the same direction as the Legislature, but not contrary to nor in an opposite direction.

5. **Constitutional Law—Constitutionality of Law Prohibiting Moving Picture Shows on Sunday.** The prohibiting of moving picture shows on Sunday is not unconstitutional as class legislation, nor does it confiscate nor impair the value of property without due process of law, or deprive the accused of the equal protection of law under the federal Constitution.

6. **Jury—Right to Jury Trial Where Punishment for Violation of Ordinance is Imprisonment or Fine Exceeding $20.** In this state persons charged with the violation of a city ordinance, where the punishment is or may be imprisonment, or a fine and costs in excess of $20 with or without imprisonment, are entitled to a trial by jury. A municipal court in this state may summarily and without a jury impose a fine and costs not in excess of $20, and may imprison the accused for the payment of such penalty, but not otherwise.

William Johnson was convicted of operating a moving picture show on Sunday in the city of Bartlesville, and his punishment fixed at a fine of $50 and costs, in default of which he was incarcerated in the city jail, and he petitions for writ of habeas corpus. Writ allowed, and respondent ordered to release petitioner.

Foster & O'Neil, for petitioner.

E. L. Fulton, Asst. Atty. Gen., A. O. Harrison, and D. A. Richardson, for respondent.

BESSEY, J. William Johnson, the petitioner, was on the 4th day of September, 1921 (Sunday), arrested for violating certain ordinances of the city of Bartlesville, by operating and maintaining a moving picture show in said city on Sunday. On the 6th day of September, 1921, the petitioner was tried on this charge and found guilty, and his punishment was fixed at a fine of $50 and costs, amounting to $6.75, in default of the payment of which the petitioner was committed to and incarcerated in the city jail until such fine and costs should be paid.

At the trial the petitioner pleaded not guilty and demanded a trial by jury, which was by the court denied. Application was made to the district court of Washington county for

petitioner's release on a writ of habeas corpus, which application was by that court denied. Whereupon a like application was lodged in this court, which is now under consideration.

The grounds alleged in the application may be summarized as follows:

(1). That the ordinances under which the petitioner was tried and convicted, being ordinance No. 580, and No. 882, amendatory thereto, are void for the reason that the city of Bartlesville, under the law and the provisions of its charter, is without authority to enact an ordinance regulating or prohibiting the operation of moving picture shows in Bartlesville on Sunday.

(2). That the ordinance, as amended, provides for a penalty in excess of the maximum penalty prescribed by statute for work and labor done and performed on Sunday and is therefore void.

(3). That the ordinance is class legislation, unconstitutional and against common rights, and its enforcement is calculated to and has deprived this petitioner of his liberty without due process of law.

(4). That the petitioner was deprived of his right of a trial by jury.

The ordinance complained of, as amended, is as follows:

"An ordinance prohibiting the operation and running of moving picture shows, inclusive of any vaudeville acts, and likewise the staging and producing of theatrical entertainments on Sunday, providing penalties for violation, repealing all conflicting ordinances, and declaring an emergency.

"Be it ordained by the board of commissioners of the city of Bartlesville, Oklahoma:

"Section 1. It is hereby declared unlawful for any person, firm or corporation to operate or conduct or to cause to be ope-

rated or conducted within the limits of this city, any moving picture show, or to exhibit for hire or otherwise any moving pictures, inclusive of any so-called vaudeville acts or performance on the Sabbath day, or the first day of the week, commonly known and designated as Sunday.

"Section 2. It is hereby declared unlawful for any person, firm or corporation to stage, exhibit or produce or to cause to be staged, exhibited or produced, any form of theatrical entertainment for hire, or otherwise, within the limits of this city on the Sabbath day or the first day of the week, commonly known and designated as Sunday.

"Section 3. Any person assisting in any fashion as servant, agent, laborer or employee, or otherwise, in a violation of the provisions of sections 1 and 2 of this ordinance shall likewise be deemed guilty of a misdemeanor and shall be punished as provided by the terms of this ordinance.

"Section 4. Any person, firm or corporation adjudged guilty of the violation of any of the provisions of this ordinance, upon conviction shall be fined in a sum of not more than fifty dollars ($50.00) nor less than five dollars ($5.00), together with the costs of the action.

"Section 5. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

"Section 6. Owing to the fact that at the present time there is no adequate ordinance in force in this city covering the subject of this ordinance, and to the further fact that certain persons, firms and corporations are about to stage, exhibit and produce certain theatrical entertainments and moving pictures on the Sabbath day,

"Now, therefore, for the preservation of the public peace, an emergency is hereby declared to exist by reason whereof this ordinance shall be in full force and effect from and after its due passage, approval and publication as required by law."

Section 3, art. 18, of our Constitution provides that any city containing more than 2,000 inhabitants may frame a charter for its own government, consistent with and subject to the laws of this state, which when approved shall be the organic law of the city.

Section 4, art. 1, of the charter of the city of Bartles-
ville is, in part, as follows:

"The city shall have all the powers conferred upon cities
of the first class by the Constitution of the state of Oklahoma
and by the laws of the state not rendered inoperative by the
adoption of this charter, and shall have all such legislative,
executive, and judicial power as is necessarily incident to or
proper in the conduct of its business and affairs and such as
will promote the interests and secure the rights of its inhab-
itants, as fully as if specifically enumerated herein. The
enumeration of any particular powers shall in no wise limit
the plenary powers above provided for said city."

Section 1, art. 5, of said charter is as follows:

"The board of commissioners shall consist of three mem-
bers, elected in the manner prescribed by this charter, and, ex-
cept as otherwise provided herein, shall be vested with all
legislative powers of the city."

Within the limitations prescribed by the Constitution, it
was clearly the intent of the framers of the Constitution to
delegate local self-government to cities under a charter form
of government in a larger measure and to a greater extent than
is accorded cities existing under general law. Under the
general laws of this state municipal corporations are vested
with local police powers delegated to them by statute, specifi-
cally expressed or necessarily implied. Cities may make and
enforce within their limits all such local police, sanitary, and
other regulations as are calculated to promote the health, sani-
tation, comfort, convenience, and welfare of the community,
not in conflict with the Constitution and general laws. If
cities existing under general laws have these powers, cities
existing under special charters may have all these and more,
depending upon he provisions of the charter.

It is practically impossible to define with precision the
term "police power" because of the vast variety of conditions
and circumstances governing its application. Chief Justice
Shaw states:

"It is the power to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution."

It is always easier to determine whether a particular case comes within the general scope of its powers than to give an exact abstract definition of the power itself. 3 McQuillin on Municipal Corporations, §§ 889, 890, 894.

It is well recognized that police regulations appropriate for a rural community, a small city, or a large city may be quite different. For instance, traffic regulations relating to the operation of automobiles in a city of 2,000 inhabitants, while entirely appropriate and adequate in that city, might not be appropriate nor adequate in a city of 100,000 inhabitants. It is for the local lawmaking power to determine the necessity or expediency of such regulations, and when made they will not be disturbed so long as they reasonably tend to promote the order, comfort, or welfare of the community and are not in conflict with some general law. To us it seems that in doubtful cases the courts should have a greater inclination to uphold an ordinance passed as in this case, pursuant to a referendum vote of the people, than where the ordinance is enacted on the initiative of the lawmaking body alone.

This court held in the case of State v. Smith, 19 Okla. Cr. 184, 198 Pac. 879, that it was within the power of the state Legislature to prohibit moving picture shows on Sunday. If the state has that power and fails to exercise it, we think the city of Bartlesville may do so under its express and implied powers, derived from the Constitution, general laws, and its charter. Even if the Legislature should hereafter, by general law, specifically prohibit moving picture shows on Sunday, the law-making body of the city might still legislate upon the same subject so long as it did so without being in conflict with the

general law. In other words, a municipality may move in the same direction as the Legislature, but not contrary to nor in an opposite direction.    3 McQuillin on Municipal Corporations, § 894; Ex parte Johnson, 13 Okla. Cr. 30, 161 Pac. 1097; Ex parte Monroe, 13 Okla. Cr. 62, 162 Pac. 233.

The express and implied powers granted to municipalities in this state, relating to police regulations, cover a multitude of subjects, among those enumerated in the statutes being to enact, ordain, alter, modify, or repeal any and all ordinances, not repugnant to the laws of the United States, and the Constitution and laws of this state, as shall be deemed expedient for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, and measures affecting the health and general welfare of the community. Section 572, R. L. 1910, et seq. Where such powers are delegated to municipalities in general terms, the lawmaking power is not limited to the treatment of subjects specifically named, but there is the implied power of determining, within the bounds of reason, when any specific act or omission is deemed to be inimical to the good order or general welfare of the community.

It is well recognized in this country that the cessation from ordinary labor one day in seven is a salutary regulation, calculated to promote the peace, health, and good order of the people. We hold, therefore, that the regulation or prohibition of Sunday amusements is not unreasonable, and is a necessarily implied power granted to municipalities under the Constitution, statutes, and charter of the city, in the exercise of its police power.    3 Dillon on Municipal Corporations (5th Ed.) § 719.

On Sunday regulations, see 25 R. C. L. 1416, 1417, and cases cited; on delegated police power, 19 R. C. L. 728 et seq.; 3 McQuillin on Municipal Corporations, § 894; Ex parte Boch-

mann, 20 Okla. Cr. 78, 201 Pac. 537; on moving picture shows, 3 McQuillin on Municipal Corporations, 958; on Sabbath observance, 3 McQuillin on Municipal Corporations, § 963, and State v. Smith, 19 Okla. Cr. 184, 198 Pac. 880.

A municipality may pass and enforce ordinances prohibiting acts or omissions which are also prohibited by statute. Oklahoma City v. Spence, 8 Okla. Cr. 121, 126 Pac. 701; In re Simmons, 4 Okla. Cr. 662, 112 Pac. 951, on rehearing, 5 Okla. Cr. 399, 115 Pac. 380. The doctrine announced in these cases has never been changed in this state, so far as we know, except that the right to a trial by jury in municipal courts has been modified, as will be noticed further on in this opinion.

In our opinion, this ordinance is not class legislation, does not confiscate nor impair the value of the property of the accused, in the sense that it deprives him of due process of law, and is not in violation of any other constitutional right. In the present complex state of society, individuals may be required to yield certain rights and privileges they once enjoyed, in order that the majority may enjoy other rights and privileges of more importance. Individual rights and privileges, in many cases, must yield and be subservient to the rights and comforts of the people as a whole.

Not many years ago it was earnestly contended by those engaged in the liquor business that they had a natural and constitutional right to manufacture and use intoxicating liquor. The brewers and distillers engaged in this business claimed that liquor was property, and that a state statute prohibiting the manufacture and sale of liquor directly and indirectly deprived them of their property without due process of law; that the enactment of prohibitory and local option laws was confiscatory in effect because the enforcement of such laws tended to depreciate and make valueless their breweries and distilleries and other property and equipment used

in their business. At one time this may have been an open question, but it has now been uniformly held that, while such rights did exist, it was within the authority of the state, in the exercise of its police power, to extinguish and abolish these rights in the interest of society as a whole. This question is ably treated by Mr. Justice Harlan in the case of Peter Mugler v. State of Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.

This case has been well and comprehensively briefed by counsel on both sides. To refer to all the decisions cited by counsel would extend this opinion to too great a length. There has been so much written in the text-books and law reports upon the subject of police powers that to analyze all the citations given would amount to writing a treatise on that subject. A careful reading of the Mulger Case will be sufficient to illustrate the point here involved.

We next come to the question of whether or not a violation of a municipal ordinance is criminal in its nature and whether or not one charged with the violation of an ordinance is entitled to a trial by jury. Section 1, c. 147, Session Laws of 1915, concludes as follows:

"Such proceedings are hereby declared to be criminal in their nature; and except as otherwise specifically provided, shall be governed by, and subject to, general laws relating to criminal procedure."

This section was amended by Act March 5, 1917, Session Laws of 1917, p. 190, wherein it is provided:

"In the trial of all cases in said municipal courts, where the offense as defined by the city ordinance is punishable by a fine only, the defendant shall be tried without a jury, but in all cases where the defendant is charged with the violation of a city ordinance, and where said offense may be punishable by imprisonment, the defendant shall be entitled to a trial by jury in the justice of the peace court within said city."

While this amendatory section does not in specific terms state that a violation of a city ordinance is criminal in its nature, the declaration that ''Where the offense may be punishable by imprisonment the defendant shall be entitled to a trial by jury'' indicates that such action is criminal in its nature.

Section 4646, R. L. 1910, provides:

''Actions are of two kinds: first, civil; second, criminal.'' Section 5544, R. L. 1910, defines a criminal action thus:

''The proceeding by which a person charged with a public offense is accused and brought to trial and punished, is known as a criminal action.''

Taking into consideration the provisions of the Code of Criminal Procedure, together with the Constitution and statutory enactments relating to municipal courts, we cannot conceive how any action where an accused will or might be subjected to imprisonment on any charge amounting to more than a petit offense can be anything but a criminal action. It has been so decided by this court in a number of cases. To review the reasons and arguments here in detail would extend this opinion unnecessarily. Those who desire to analyze the reasons for such holding are referred to the following decisions of this court. Ex parte Tom Johnson, 13 Okla. Cr. 30, 161 Pac. 1097; Ex parte Monroe, 13 Okla. Cr. 62, 162 Pac. 233; Ex parte Doza, 13 Okla. Cr. 287, 164 Pac. 130; Ex parte Gownlock, 13 Okla. Cr. 293, 164 Pac. 130; Ed Franks v. City of Muskogee, 14 Okla. Cr. 391, 171 Pac. 492; City of Blackwell v. Burgett, 14 Okla. Cr. 682, 166 Pac. 442; Miller v. State, 17 Okla. Cr. 734, 191 Pac. 1119; Ex parte Joe King, 13 Okla. Cr. 51, 161 Pac. 1102.

In the King Case, in the Franks Case, and in the Blackwell Case the offenses charged were not crimes under the statutes; in all the other cases cited the offense made so by ordinance was also a violation of statutory law, but this court has made no distinction in this regard. The test as to whether or

not the accused is entitled to a jury is whether or not the punishment will or might be imprisonment, or a fine and costs in excess of $20 for the nonpayment of which the accused may be imprisoned. The dividing line between mere petit offenses that could be tried summarily without a jury and the graver offenses of a criminal character, where the accused is entitled to a jury, must be arbitrarily made at some point. The federal Constitution, the statutes of this state, and decisions of this court have fixed the dividing line at a penalty of $20, including costs. In other words, a municipal court, under the holdings of this court, may summarily and without a jury impose a fine and costs not in excess of $20, and may imprison the accused for the nonpayment of such fine, but not where the punishment is or may be in excess of this sum. See, also, Ex parte Bochmann, 20 Okla. Cr. 78, 201, Pac. 537.

Under the conditions here the petitioner was imprisoned for the nonpayment of a fine and penalties in excess of $20, and following the rule laid down by this court in other decisions, the petitioner was wrongfully denied the right of a trial by jury.

For the reasons stated the writ is allowed, and the respondent is ordered to release the petitioner.

DOYLE, P. J., and MATSON, J., concur.