### Ex parte MRS. CHARLES DAUGHERTY et al.

No. A-4165.   Opinion Filed March 8, 1922.
(204 Pac. 937.)

(Syllabus.)

1. **Statutes—Subjects and Titles—Invalidity of Provision for Trial of Municipal Offenses by Justice of the Peace or County Court.** Section 1 of chapter 147, Session Laws of 1915, as amended by the Session Laws of 1917, p. 190, providing for the trial of municipal offenses before a justice of the peace or the county court, is inoperative, as being in conflict with section 57, art. 5, of our Constitution, providing that every act shall embrace but one subject, which shall be clearly expressed in the title.

2. **Same—Original or Concurrent Jurisdiction of Municipal Offenses or Means of Taking Change of Venue not Conferred by Act.** Held, that this section of the statute, as amended, does not in terms, or by implication, confer original or concurrent jurisdiction of municipal offenses upon a justice of the peace court or the county court.

(a)   This amendment is not germane to the subject of appeals and cannot be construed as providing a means of taking a change of venue from a municipal court to any other court.

3.   **Municipal Corporations—Police Courts—Penalties Exceeding $20 Fine not Enforceable.** It is beyond the power of a police magistrate, as the law now exists in this state, to enforce a penalty for the violation of an ordinance, where the punishment may be a fine in excess of $20, for the nonpayment of which the accused may be imprisoned.

4.   **Same—Summary Punishment Without Jury for "Petty Offense," as Distinguished from "Crime," Authorized.** Police magistrates may punish summarily without a jury one convicted of the violation of a municipal ordinance amounting to a mere "petty offense," as distinguished from an offense amounting to a "crime" within the meaning of the Constitution.

(a)   As to the meaning and application of the term "petty offense" and "crime," see the text of the opinion.

In the matter of the application of Mrs. Charles Daugherty and J. R. Reed for a writ of habeas corpus. Writ allowed, and petitioners ordered discharged.

John S. Burger and M. L. Opperud, for petitioners.

Roy W. Cox, City Atty., for the State.

BESSEY, J.   On the 17th day of December, 1921, a complaint was filed in the municipal court of the city of Blackwell, charging the petitioners, Mrs. Charles Daugherty and J. R. Reed, with occupying a room for immoral purposes, in violation of Ordinance No. 210 and amendments thereto, of the city of Blackwell. On the same day a warrant was issued out of the municipal court, upon authority of which the petitioners were arrested and brought before the municipal court, where they were duly arraigned and pleaded not guilty. On that day the petitioners demanded a trial by jury, whereupon the municipal court made the following order:

"Now, on this 3d day of January, 1922, defendants demanded a trial by jury, and the above cause, remanded to the

justice court of E. S. Foster, justice of the peace for the city of Blackwell, county of Kay, state of Oklahoma. R. W. Parkhurst, Police Judge.''

The cause was set down for trial in the justice court on January 3, 1922, at 5 o'clock p. m. The police judge required the petitioners to give bond in the sum of $50 each for their appearance in the justice court. These bonds were accordingly made and approved. The cause was docketed in the justice court, entitled:

''City of Blackwell v. Mrs. Charles Daugherty and J. R. Reed, Defendants.''

Following the caption it is recited:

''This cause received from city police force by change of venue on demand of jury trial.''

The cause then proceeded to trial before a jury of six men, resulting in a verdict of guilty, assessing the penalty at a fine of $100 each and the costs of the action, and judgment was rendered accordingly. Upon the failure of the petitioners to pay the fine and costs, in accordance with this judgment, a commitment was issued by the justice of the peace, pursuant to which the petitioners were incarcerated in the city jail of Blackwell. The petitioners thereupon applied to this court for a writ of habeas corpus, setting up, among other things, that Ordinance No. 210, under which they were convicted, was void, and that E. S. Foster, justice of the peace, had no jurisdiction to try the cause.

Doubtless it was the intention of the police magistrate and the city attorney to carry on this prosecution in compliance with the provisions of chapter 147, Session Laws of 1915, entitled ''An act to regulate appeals from judgments of municipal courts, prescribing the procedure thereof, and repealing all laws in conflict herewith,'' as amended by House Bill

No. 428, Session Laws 1917, p. 190. Section 1 of the original act defines the term "municipal courts," and defines an "offense" as "the doing of some act, or the failure to perform some duty, commanded by some municipal ordinance, * * * for the violation of which a penalty" is imposed. Section 2 provides for an appeal from the municipal court to the county court. All the balance of the 16 sections of the act relate to the method and procedure of taking an appeal to the county court and the mode and procedure of trial on appeal in the county court. Section 8 of the original act provides that the case shall be tried on appeal in the same manner that it should have been tried before the municipal court, except that upon demand of either party a jury shall be called to try the issues. Section 14 of the original act provides that any person convicted upon appeal shall be punished by such fine or imprisonment, or both, as may be prescribed by ordinance, including the costs in all courts, and that it shall be a part of the judgment that the defendant stand committed to the city jail until the judgment be complied with, and that the defendant, when so committed, shall be credited at the rate of $1 per day upon the fine and costs so assessed against him.

Section 1 of the amendatory act (Session Laws 1917, p. 190) is as follows:

"The term 'municipal courts,' as herein used, is hereby defined to mean and include all courts of the state of Oklahoma, organized and existing in the various towns and cities thereof, that shall have and possess under the Constitution and laws of the state, original jurisdiction to hear and determine offenses against ordinances of municipalities, and 'offense' is hereby defined to mean the doing of some act prohibited, or failure to perform some duty commanded by the municipal ordinances, and for the violation of which a penalty or punishment is provided. It is further provided that in the trial of all cases in said municipal court where the offense as defined

by the city ordinances is punishable by a fine only, the defendant shall be tried without a jury, but in all cases where the defendant is charged with the violation of a city ordinance, and where said offense may be punishable by imprisonment, the defendant shall be entitled to a trial by a jury in the justice of the peace court within said city, or in the county court of said county, as the case may be, and it shall be the duty of the city attorney to prosecute said offense in such justice of the peace or the county court in the name of the city, said jury to be drawn and selected in the justice court in the same manner as provided by law for juries in said justice of the peace courts, and each juryman shall receive fifty (50) cents per day for each trial, same to be taxed as costs in the case and jury trials in the county court to be conducted in all respects the same as now provided therein. All fines collected by the justice of the peace or county court in the trial of such cases shall be paid to the city treasurer and his receipt taken therefor, and all such fines shall be credited to the general fund of such city: And, provided further, that when any person is arrested, charged with an offense, as herein defined, he shall be taken forthwith before the municipal judge, the county judge or some justice of the peace having jurisdiction, and the amount of his bail shall be fixed and an opportunity given him to make such bail and such judge or justice of the peace shall admit said defendant to bail in the amount and manner provided by the ordinance of said city.''

Section 1 of article 5 of the special charter of the city of Blackwell, effective December, 1917, is, in part, as follows:

''A municipal court is hereby established for the city of Blackwell, and to preside over said court there is hereby created one municipal judge; and all proceedings coming before the municipal court in said city shall be heard and determined by the municipal judge. Such court shall have jurisdiction as follows: (1) To have original jurisdiction to hear and determine all violations of the ordinances of said city and violations of this charter; (2) jurisdiction in proceedings had for the collection of licenses, fees, and other revenues as provided by ordinance, except such actions as may fall within the ex-

clusive jurisdiction of other courts, or such other actions for violation of city ordinances as may be made triable before other courts by the Constitution and laws of the state.''

Section 4 of the same article is as follows:

''It is hereby made the duty of the city attorney in all cases of arrest for violation of the city ordinances and this charter to immediately cause to be filed before the municipal judge a complaint in writing against such accused person, and the accused person must thereupon be arraigned forthwith before the municipal judge for his plea; and if the plea be 'not guilty' a trial of the accused must then be had at once, or at such time as the case may be continued by order of the municipal judge. All fines collected in criminal actions shall be turned into the city treasury.''

By the ordinances of the city of Blackwell it is provided that one found guilty of occupying a room for immoral purposes is guilty of a misdemeanor, and shall be fined in any sum not exceeding $100 and the costs of prosecution. By statute one convicted of a misdemeanor may, upon failure to pay the fine imposed, be imprisoned one day for every dollar of the fine and costs so imposed. Under the circumstances here, there is no statute lodging original or concurrent jurisdiction of municipal offenses with a justice of the peace or county court, unless the amendatory statute (section 1, Session Laws, 1917, p. 190), above quoted, confers such jurisdiction on these courts.

The petitioners attack the validity of the ordinance under which this prosecution was brought and the validity of this statute for the following reasons:

(1) That this section of the statute is unconstitutional, void, and ineffectual, because the subject-matter treated is foreign to and not germane to the title of the act, and has no connection with the object of the balance of its provisions, in violation of section 57, article 5, of the Constitution, providing

that every act shall embrace but one subject, which shall be clearly expressed in the title.

(2) That this section of the statute is in violation of section 6, article 2, of our Constitution, providing that justice shall be administered without sale or prejudice.

(3) That the act neither by its terms nor by implication confers original or concurrent jurisdiction of municipal offenses upon a justice of the peace or county court.

(4) That if it was the intent of the Legislature, by the passage of this amendment, to provide a method of taking a change of venue or transfer of the cause from the municipal court to a justice of the peace court or the county court, the statute is ineffectual for that purpose, because it provides for no method of authenticating and transferring the record from one court to another, and that it does not operate to modify or enlarge the jurisdiction of either court.

(5) That it was beyond the power of the police magistrate of the city of Blackwell to enforce an ordinance providing for a fine of $100, with imprisonment.

The object of this law, as expressed in the title, is:

"An act to regulate appeals from judgments of municipal courts, prescribing the procedure thereof."

Section 1 of the act as amended, above quoted, in no way relates to appeals. As has been stated, all of the other sections of the act are germane to that subject. Section 57 of article 5 of our Constitution is, in part, as follows:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title; * * * if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

To give the above constitutional limitation any effect whatever, it seems clear that it must be made to apply to this section of the statute, the object of which, by no implication or process of reasoning, can be construed as affecting appeals from municipal courts. Pottawatomie County v. Alexander, 68 Okla. 126, 172 Pac. 436; Smith v. Bd. of Com. of Garvin County, 62 Okla. 120, 162 Pac. 463; Lusk v. Starkey, 53 Okla. 794, 158 Pac. 918; Johnson v. Grady County, 50 Okla. 188, 150 Pac. 497; In re County Com'rs, 22 Okla. 435, 98 Pac. 557.

Assuming, for this argument, that this section does not come within the constitutional limitation as stated above, if it was the intention of the Legislature to exact from the accused, as a condition precedent to a trial by jury, that the accused first pay the jury fees, it might be an open question whether that would not be in violation of section 6 of article 2 of the Constitution, providing that justice shall be administered without sale or prejudice. This provision is broader than most constitutional provisions, and was doubtless designed, among other things, to accord to poor persons accused of an offense every right and advantage possessed by those who have money or property. Jeffries v. State, 9 Okla. Cr. 573, 132 Pac. 823. But since this record does not disclose that these petitioners were paupers, or that because of their poverty they were deprived of any constitutional right, the constitutionality of this feature of the statute need not here be decided.

The proceedings had in the municipal court and in the justice of the peace court show that it was the theory of both these magistrates and the city attorney that the municipal court alone had original jurisdiction of the offense. If that be true, how, then, did the justice of the peace acquire jurisdiction? The act nowhere, in terms or by implication, confers appellate jurisdiction or secondary jurisdiction upon a justice

of the peace. If the act confers any jurisdiction at all upon a justice of the peace, it must be original jurisdiction. We cannot assume that the Legislature intended to lodge with these magistrates a kind of split or divided jurisdiction, in the absence of an express declaration to that effect. The language of the act indicates that it was the purpose of the Legislature that in all cases where the accused could be tried summarily without a jury the action should be commenced and prosecuted to final judgment in the municipal court, but if the action was one in which the accused had a right to a trial by jury the action should be commenced and prosecuted to final judgment before a justice of the peace or county court. The language of the amendment does not justify a conclusion that there was an attempt made here to authorize a change of venue from one court to another. If there was, we think it was an abortive attempt. There is no method provided for authenticating the record, and conveying it to the justice or county court, as a basis for jurisdiction. Ordinarily, changes of venue are taken from one court or district to another having concurrent jurisdiction. The jurisdiction of these magistrates is in no sense concurrent. In cities having special charters, a justice of the peace or the county court is not primarily charged with or responsible for the enforcement of municipal regulations. Both are officers of different subdivisions of the state government.

Viewing this statute from the standpoint of the police magistrate and the city attorney, they seem to assume that the police magistrate had original jurisdiction of the offense, and that later he was empowered to deputize a justice of the peace as a kind of assistant or referee to conclude the proceedings. The jurisdiction of county courts and justice of the peace courts are well and specifically defined by the Constitution and the statutes, and this section of the statute does not operate to modify or repeal the laws defining the jurisdiction of

county courts or justice of the peace courts. An act of the Legislature in which both the title and the text of the act pertain to matters in no way germane to the jurisdiction of courts, will not, by implication or judicial construction, operate to modify the jurisdiction of established courts. 25 R. C. L. "Statutes—Matters Germane to Subject," § 90; also sections 170 and 171.

Another statutory incongruity appears here. Both the original act and the amendment thereto provide for appeals from the municipal court to the county court, and the amendment attempts to lodge in a state court both original and appellate jurisdiction of municipal offenses. In this case, if the justice of the peace had original jurisdiction only, and not concurrent jurisdiction with the police magistrate, the appearance of the petitioners in the justice court was not in pursuance of original process issued out of such court, but was in pursuance of the conditions of a bond exacted by the police magistrate. Such involuntary appearance would not, in our judgment, be sufficient to give the justice court original jurisdiction. Onr Constitution and statutes provide that such jurisdiction is predicated upon a verified complaint and warrant issued by the justice, and such coercive involuntary appearance cannot be substituted for these constitutional and statutory requirements. Considering this section of the statute from all of its several angles, we hold that it is in conflict with the Consitution, because its provisions are not germane to its subject or the general purpose of the act, and it contains inconsistent and irreconcilable provisions, incapable of being enforced, and that it is impossible to breathe into it the breath of life by any means of rational judicial construction.

The punishment prescribed by this ordinance was beyond the power of the police magistrate to enforce. Under the law as it then stood, and now stands, the police magistrate was the

only magistrate with original jurisdiction to try municipal offenses, and since the punishment prescribed for the violation of this particular ordinance may be a fine of $100 and costs, with imprisonment, under the former rulings of this court the accused had a constitutional right to a trial by jury in the court of original jurisdiction. Ex parte Johnson, 20 Okla. Cr. 66, 201 Pac. 533; Ex parte Bochmann, 20 Okla. Cr. 78, 201 Pac. 537; Ex parte Monroe, 13 Okla. Cr. 62, 162 Pac. 233; Ex parte Doza, 13 Okla. Cr. 287, 164 Pac. 130; Ex parte Gownlock, 13 Okla. Cr. 293, 164 Pac. 130; Ed Franks v. City of Muskogee, 14 Okla. Cr. 391, 166 Pac. 492; Miller v. State, 17 Okla. Cr. 734, 191 Pac. 1119; City of Blackwell v. Burgett, 14 Okla. Cr. 682, 166 Pac. 442; Ex parte Joe King, 13 Okla. Cr. 51, 161 Pac. 1102. It was held by this court, in the case of Ex parte Johnson, supra:

"The test as to whether or not the accused is entitled to a jury is whether or not the punishment will or might be imprisonment, or a fine and costs in excess of $20 for the nonpayment of which the accused may be imprisoned. The dividing line between mere petty offenses that can be tried summarily without a jury and the graver offenses of a criminal character, where the accused is entitled to a jury, must be arbitrarily made at some point. The federal Constitution, the statutes of this state, and decisions of this court have fixed this dividing line at a penalty of $20, including costs."

The Supreme Court of the United States, the highest court of the land, has spoken in no uncertain terms on this question, and its interpretation of this constitutional question is binding on all law-making bodies and should be followed by this and all other courts. The case of Rasmussen v. U. S. (decided by the United States Supreme Court in 1905) 197 U. S. 516, 25 Sup. Ct. 514, 49 L. Ed. 862, was a case involving the right to trial by jury of one charged with keeping a disorderly house in the territory of Alaska, where the punishment prescribed by law was fine or imprisonment in the county jail. The justices

all concurred in the conclusion that in trials for misdemeanors in Alaska the accused had a constitutional right to a trial by jury. This was a well-considered case, in which three of the justices, Mr. Justice White, Mr. Justice Harlan, and Mr. Justice Brown, wrote separate opinions, giving their separate reasons for the conclusions reached. A part of the opinion of Mr. Justice Harlan follows:

"The proposition that a people subject to the full authority of the United States for purposes of government may, under any circumstances, or for any period of time, long or short, be governed * * * without regard to the Constitution, is, in my judgment, inconsistent with the whole theory of our institutions." "No tribunal or person can exercise authority involving life or liberty, in any territory of the United States, organized or unorganized, except in harmony with the Constitution."

In the case of Callan v. Wilson, 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223, James C. Callan was charged, along with others, in the police court of the District of Columbia with conspiracy. Upon the trial Callan demanded a jury, which was refused, and, having been found guilty by the police magistrate he was sentenced to pay a fine of $25, and in default of payment to suffer imprisonment for a period of thirty days. Callan was released by the United States Supreme Court on a writ of habeas corpus. Mr. Justice Harlan, speaking for the court, said:

"The third article of the Constitution provides for a jury in the trial of 'all crimes, except in cases of impeachment.' The word 'crime,' in its more extended sense, comprehends every violation of public law; in a limited sense, it embraces offenses of a serious or atrocious character. In our opinion, the provision is to be interpreted in the light of the principles, which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by a jury. It is not to be construed as relating only to felonies, or offenses punish-

able by confinement in the penitentiary. It embraces as well some classes of misdemeanors, the punishment of which involves or may involve the deprivation of the liberty of the citizen. It would be a narrow construction of the Constitution to hold that no prosecution for a misdemeanor is a prosecution for a 'crime' within the meaning of the third article, or a 'criminal prosecution' within the meaning of the Sixth Amendment.''

We have not overlooked the fact that in the case of In re Simmons, 4 Okla. Cr. 662, 112 Pac. 951, the court made the declaration that, where an act committed by a person may constitute a crime against the state and a different petty offense against the city ordinance, the two offenses being different, the offender may be proceeded against under either the city ordinance or the state law, or both. This court has no intention of departing from the rule as thus stated in the Simmons Case, but the question of what constitutes a "petty offense" was not well considered in that case, and this court has subsequently refused to follow the declaration made in that case and in the case of Oklahoma City v. Spence, 8 Okla. Cr. 121, 126 Pac. 701, to the effect that, where the ordinance provides a penalty imposing a fine in excess of $20, with imprisonment, one violating it could be punished summarily by a police magistrate, without a jury. On the contrary, it was held in Ex parte Tom Johnson, 13 Okla. Cr. 30, 161 Pac. 1097, in an opinion written by Presiding Judge Doyle, that an offense under a city ordinance which is also made a misdemeanor by statute, the punishment for which is a fine in excess of $20, with imprisonment for the nonpayment of the fine, or carrying with it a penalty of imprisonment, is not a "petty offense," and that the accused in such a case has a right to be tried by a jury in the court taking original cognizance of the offense.

We know of no certain method of distinguishing the meaning of the word "crime" in its restricted sense from the

term "petty offense," except by the severity of the punishment prescribed. There are many grades of assault, ranging from simple assault to murder or rape, and while a police magistrate may have the authority to punish summarily for simple assault, no one would have the temerity to claim that a police judge, as such, could determine the guilt of one charged with an assault to kill or assault to commit rape. Until the Legislature makes other adequate provisions directing otherwise, in accordance with the Constitution, petty offenses only, within the meaning of the federal Constitution and our Constitution and our general scheme of police regulations, must be tried in municipal courts.

The writ is therefore allowed, and the petitioners ordered discharged.

DOYLE, P. J., and MATSON, J., concur.