PETE CUMPTON v. CITY OF MUSKOGEE.

No. A-4529.    Opinion Filed April 28, 1923.

Rehearing Denied June 1, 1923.

(225 Pac. 562.)

(Syllabus.)

1. **Municipal Corporations—Powers Under Special Charter—Ordinances for Local Self-Government.** By section 3, art. 18, of the Constitution, this state has delegated to municipal corporations under special charters enlarged powers of local self-government. A city so organized has delegated to it power to enact, ordain, and enforce ordinances for the purpose of protecting the public peace, order, health, morals, and safety of its inhabitants, even though general statutes exist relating to the same subjects.

2. **Same—Penal Ordinances not in Conflict with State Laws.** Municipalities have no power to enact ordinances that tend to defeat or run counter to the penal laws of the state, but it is within the power of such municipalities to enact and enforce ordinances penal in their nature in aid of, or not in conflict with the penal laws of the state.

3. **Former Jeopardy—Prosecution Under City Ordinance not Bar to Prosecution under State Law.** A prosecution in a city court for a violation of a municipal ordinance which prohibits an act which is also an offense under the general criminal law of the state is not a bar to a prosecution under such state law; such a second prosecution would not be in conflict with section 21 of our Bill of Rights, providing that no person shall be twice put in jeopardy for the same offense.

4. **Same—Same Facts Constituting Different Offenses.** The violation of a municipal ordinance is an offense against the municipality, and the same facts and circumstances may constitute another and different offense against the state, the same facts constituting different offenses against different governing bodies.

5. **Municipal Corporations—City Court's Jurisdiction to Try for Crime Defined by Ordinance Where Provision for Jury Trial.** Where a municipal ordinance defines an offense as a crime, as distinguished from a mere petty offense, and provides for a trial by a jury of the county, as in this case, and such a jury is afforded, the court has power and jurisdiction to try the offender, and to assess and enforce the punishment accordingly.

6. **Searches and Seizures—Seizure of Liquor Held not "Unreason-**

able." The facts as here shown did not constitute an unreasonable search and seizure within the meaning of the federal Constitution or of our Bill of Rights.

7. **Criminal Law—Accused not Bound to Explain Telephone Conversation of Third Person with Officer in His Presence.** A defendant in a criminal prosecution will not be bound by statements made by the arresting officer declaring the import of a telephone conversation had by the officer, in the presence of the defendant, with some unknown person, tending to implicate the defendant criminally.

(a) Under the circumstances here, the defendant was not required to explain or deny the purported facts related by the officer, and the admission in evidence of what the officer said this unknown person told him over the telephone was error.

Appeal from County Court, Muskogee County; Enloe V. Vernor, Judge.

Pete Cumpton was convicted of the illegal possession of intoxicating liquors, and he appeals. Reversed.

R. P. De Graffenried and A. M. De Graffenried, for plaintiff in error.

Cliff V. Peery, for defendant in error.

BESSEY, J. This was a prosecution originally instituted by the city of Muskogee in the city court of that city by the filing of a complaint against the plaintiff in error, hereafter designated the defendant, charging him with the possession of intoxicating liquors with the intent to sell or otherwise dispose of the same. A trial was had in the city court and the defendant was found guilty and his punishment assessed at a fine of $25. An appeal was taken from this conviction to the county court of Muskogee county, where the defendant was again convicted and a fine of $75 assessed against him. The defendant then appealed to this court.

The defendant urges first that the ordinance under which he was convicted was void. The ordinance attacked is, in

part, as follows:

"Sec. 2. That it shall be unlawful for any person to manufacture, sell, give away, dispose of, exchange, barter or otherwise furnish any intoxicating liquor as defined in this ordinance, except when the same is manufactured, sold or otherwise furnished in accordance with the laws of the United States, and of the state of Oklahoma, and the rules and regulations duly prescribed thereunder.

"Sec. 3. It shall be unlawful for any person to keep or possess any intoxicating liquor as the same is defined in this ordinance with the intent to sell or otherwise dispose of the same in violation of section 2 of this ordinance."

"Sec. 7. Any person who shall violate any provision of this ordinance shall on conviction for the first offense be fined in any sum not exceeding $100; and shall on conviction for the second or any subsequent offense under this ordinance, be fined in any sum not exceeding $100 or be imprisoned not exceeding 60 days, or both."

Defendant says this ordinance is void because it provides for a maximum penalty of a fine of $100 and imprisonment for a period of 60 days; that the lawmaking body of the municipality had no authority to enact an ordinance, penal in its nature, providing for such a penalty, and that the city court was without power to enforce such an ordinance. Defendant assumes that the lawmaking body of this municipality has constitutional and statutory authority to enact ordinances, penal in their nature, pertaining to minor municipal offenses in cases only where the penalty provided is without imprisonment, and where the fine and costs do not exceed $20.

Section 1, art. 7, of the Constitution of this state, provides:

"The judicial power of this state shall be vested in

the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law.''

This clearly contemplates that the Legislature may create such courts other than those named in the Constitution as may in its judgment seem appropriate. Burke v. Walker, 25 Okla. 353, 109 Pac. 544; Chickasha Cotton Oil Mill Co. v. Lamb, 28 Okla. 275, 114 Pac. 333.

This court has held in a number of cases that an ordinary police magistrate, in the absence of express legislative authority, has no power to try persons accused of any grave offense, commonly classed as a ''crime,'' without a jury, and that where no legal means was provided for obtaining a jury such magistrate had authority only to take cognizance of petty offenses, where he might try the offender in a summary way without a jury and assess a fine and costs not to exceed $20.  Ex parte Daugherty, 21 Okla. Cr. 56, 204 Pac. 937; Ex parte Bochmann, 20 Okla. Cr. 78, 201 Pac. 537; Ex parte Johnson, 20 Okla. Cr. 66, 201 Pac. 533; Ex parte Tom Johnson, 13 Okla. Cr. 30, 161 Pac. 1097.

In each of the cases cited it was held that the several courts involved were limited to the trial of petty offenses, but this court did not hold, nor intend to hold, that it was beyond the power of the Legislature to enlarge the powers and jurisdiction of police magistrates. This court held, in effect, that in each of those cases the Legislature had not done so. In the Daugherty Case the court intimated that legislative provisions could be made for trying graver offenses in police courts.  Without doubt, then, the Legislature may enlarge the powers and jurisdiction of city courts, and the question here

presented is, Has it done so as affecting the city of Mus-·kogee?

. This court will take judicial notice that Muskogee comes within the classification by population set out in chapter 113, Session Laws of 1917, as amended by chapter 157, Session Laws of 1919, providing for the establishment and organization of a "city court." Provision is made for a judge, a clerk, a deputy clerk, and two marshals. The jurisdiction of the court is defined in both civil and criminal cases, and provisions are made for trying persons accused of the violation of city ordinances of a penal nature. Provision is made for the selecting and impaneling of juries from the body of the county, so that in any case where the accused is charged with an offense under the laws of the state or under a city ordinance he may, except in the case of mere petty municipal offenses, have his constitutional right to a trial by jury. Provision is also made for a division of the expense of maintaining this court, a portion of it being allotted to the county and the other portion to the municipality.

By section 3, art. 18, of the Constitution, this state has delegated to municipal corporations under special charters enlarged powers of local self-government. A city so organized has delegated to it power to enact, ordain, and enforce ordinances for the purpose of protecting the public peace, order, health, morals, and safety of its inhabitants, even though general statutes exist relating to the same subjects. They have no power to enact ordinances that tend to defeat or that run counter to the penal laws of the state, but it is within the power of such municipalities to enact and enforce ordinances penal in their nature in aid of, or not in conflict with, the penal laws of the state. Ex parte Johnson, 20 Okla. Cr. 66, 201 Pac. 533.

A prosecution in a city court for a violation of a municipal ordinance which prohibits an act which is also an offense under the general criminal law of the state is not a bar to a prosecution under such state law; such second prosecution would not be in conflict with section 21 of the Bill of Rights, providing that no person shall be twice put in jeopardy for the same offense. The violation of a municipal ordinance is an offense against the municipality, and the same facts and circumstances may constitute another and different offense against the state, the same facts constituting different offenses against different governing bodies. We hold, therefore, that the ordinance here in question is not unconstitutional or void as being beyond the power delegated by the state to the lawmaking body of this municipality. In re Simmons, 4 Okla. Cr. 662, 112 Pac. 951.

A city judge is selected by the electors of the municipality, like some justices of the peace, but there is no constitutional prohibition against giving such city judge or justice of the peace jurisdiction beyond the corporate limits of the city, within the county, and the power of a city court to call a jury from the body of the county is within the provisions of our Constitution and the federal Constitution. The reasons for the constitutional right of an accused to an impartial jury in the county where the offense is charged to have been committed are well stated in Re Monroe, 13 Okla. Cr. 62, 162 Pac. 233, as follows:

"It was never contemplated by our judicial system that police courts should have such jurisdiction; hence no provision was made by which they can impanel a jury. But we think the very section of the Bill of Rights (sec. 20) that guarantees to the accused in all criminal prosecutions a jury precludes the idea of a jury trial in a police court by specifying that, the jury provided for by that section shall be 'an impartial jury,' not of the city or jurisdiction in which the case is tried, but 'of the

county in which the crime shall have been committed.' And this provision, we think, was * * * intended by the framers of the Constitution to insure to the accused, as far as possible, the kind of jury designated, namely, 'an impartial jury,' and as far as possible to hedge against the professional juror, who would naturally become a 'hanger on' round a police court, to draw his pay, and do the behests of the presiding judge of that tribunal, and thus defeat the very purpose for which the jury system was called into existence.''

Now, this municipal court is more than an ordinary police court. It is, in a sense, a state court, a court of special and enlarged jurisdiction, a court with powers extending beyond the borders of the municipality and exercising powers in some respect analogous to a justice of the peace, also a municipal officer, whose power to summon juries and witnesses from beyond the limits of the district in which he is empowered to hold court has never been questioned. Ordinary police magistrates have no authority to summon jurors from the county, but here the Legislature has provided for a city court with enlarged jurisdiction and has provided a way for doing this. We hold, therefore, that where a municipal ordinance defines an offense as a crime, as distinguished from a mere petty offense, and provides for a trial by a jury of the county, as in this case, and such a jury is afforded, the court has power and jurisdiction to try the offender and to assess and enforce the punishment accordingly. City courts having special composite jurisdiction have been established and upheld in many of our sister states. State v. Dreger, 97 Minn. 221, 106 N. W. 904; Ex parte Wilbarger, 41 Tex. Cr. R. 514, 55 S. W. 968; In re Greer, 58 Kan. 268, 48 Pac. 950; Chesney v. McClintock, 61 Kan. 94, 58 Pac. 993.

The officer who made the arrest in this case had no writ or warrant for the arrest of the accused; he had no search warrant empowering him to search this room. Without such warrants the arrest was made and the room searched. The circum-

stances under which this was done, as shown by the record, were as follows: The officers went to the hotel where the defendant was registered; they looked on the register and ascertained which room defendant was registered in; they went to this room and knocked on the door, and defendant told them to come in; the officers then entered and told him that they were informed he had some whisky, and defendant told them to "help themselves"; the little handbag was seen sitting on the floor by the side of the bed; they picked it up, opened it, and the whisky, empty bottles, corks, and funnel were in it, but nothing else. The defendant did not demand a search warrant, and at no time made any objection to the entrance of the officers or the search of his room. They entered the room upon his invitation; they searched the room without objection, with his express or implied assent, he having told them to "help themselves." The right to be unmolested without a search warrant was a right that could be waived and we think that in this case the defendant did waive it by his words and conduct.

The defendant claimed that the handbag and its contents belonged to his brother. The handbag, the quart of whisky, the empty bottles, and corks were carried away by the officers without objection. Was this an "unreasonable seizure" within the meaning of the Fourth Amendment to the Constitution, providing:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Was it contrary to section 30 of our Bill of Rights, providing:

"The right of the people to be secure in their persons,

houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

Where, as the evidence tends to show in this case, the accused was a single man, a migratory vendor of corn whisky, having his home (?) and business office in various rooming houses and hotels, it would seem that the room so occupied by him would not be invested with such sacred privacy as would be accorded to a private residence, a real home, or a legitimate place of business, where the occupants may rightfully claim a right to privacy and freedom from official intrusion. Further, it seems that here the conduct of accused was practically equivalent to an invitation to proceed without a warrant. No objections were interposed either to his arrest or to the taking of the evidence of law violation. His room was his place of business, where he was equipped with a small funnel and small containers, to supply thirsty customers at retail. He was charged with illegal possession and the officers, we think, were justified, in this instance, in making this arrest without a warrant. Section 2471, Comp. Stat. 1921, provides that an officer may without a warrant arrest a person for a public offense committed or attempted in his presence. The illegal possession of this liquor in the presence of the officers was indicated by the equipment there found, showing that the whisky was there to be sold, contrary to law. The offense charged was "illegal possession." This possession was in the presence of the officers; that its possession was for illegal purposes was apparent. The arrest was not made until after the accused denied the ownership of the whisky, bottles, corks, and funnel, there inspected by the officers without any objection. Arrests made without a warrant, on suspicion, for a crime not committed in the presence of an

officer are illegal; and this is true where the crime is not apparent until after the arrest or illegal search, but if the right to demand a search warrant was waived and the search disclosed an illegal possession, the offense was then committed in the presence of the officer, which justified the subsequent arrest of the accused without a warrant. Hughes v. State, 145 Tenn. 544, 238 S. W. 588, 20 A. L. R. 639, and annotations. If this room or "home" was open for the free entrance of customers, the officers had a right to enter when the accused bade them "come in." When the officers said to the accused, "We have heard you have some whisky here," and the defendant replied, "Help yourself," the taking of the whisky and containers, in our judgments, did not constitute an unreasonable search and seizure within the meaning of the federal Constitution or our Bill of Rights. Dillon v. United States (C. C. A.) 279 Fed. 639.

If the search had been unreasonable and made with force, over the protest of the accused, the rule might be different. It would require too much space to review the divergent authorities upon the question of the admissibility of evidence obtained by an illegal or unauthorized search and seizure. We hold that the facts here do not raise that issue, and an interpretation of that point is not necessary to a decision in this case. The constitutional rights of persons accused of crime will be guarded by this court with the utmost vigilance, but, on the other hand, this court will not erect stumbling blocks calculated to embarrass officers in all reasonable lawful efforts to enforce the criminal laws of this state.

Finally, it is urged that the court erred in admitting in evidence a telephone conversation had in the presence of the defendant, which came about in this wise: A few minutes after the arrest of the defendant the landlady announced to the officers that the defendant was wanted at the telephone. The of-

ficer said to her that he would answer the telephone for him. Thereupon he went to the phone and announced to the party who was calling that he was Pete Cumpton and asked what was wanted. The reply was, "Bring it down right way, I am dry as h——." The officer then turned to the defendant and said to him. "One of your customers wants you to bring him down a couple of pints."

We have come to the conclusion that this telephone conversation was both incompetent and prejudicial. It was not a spontaneous declaration of a participant or bystander, or an integral part of the crime charged, so as to be a part of the res gestae. It was not even explanatory of the constituent conditions and circumstances of the crime, except by an uncertain inference from an unknown source. Neither was it an accusation or declaration that the accused, under the circumstances, was bound to answer or explain. The accused cannot be compelled to testify against himself, directly or indirectly. Even if the source of the telephone conversation was known, the defendant could have remained silent, and his silence, under the circumstances, should not be disclosed to the jury to his prejudice. The jury may have believed, and probably did believe, that the statement of the officer that "one of your customers wants a couple of pints" was competent proof that the person telephoning was a customer of the accused. This fact, if it was a fact, cannot be established in this manner, by the declaration of a third person.

For the erroneous reception of this evidence, this cause is reversed.

MATSON, P. J., and DOYLE, J., concur.